[Montgomery Street Railway Co. v. Shanks.]

# Montgomery Street Railway Co. *v.* Shanks.

*Action against Street Railway Company to recover Damages for Personal Injuries.*

1. *Action against street railway company for negligence; sufficiency of complaint.*—In an action against a street railway company to recover damages for personal injuries, a complaint states a cause of action for simple negligence, which alleges in substance that on a street in a city a horse hitched to a buggy in which the plaintiff was sitting, back the vehicle on or near to the defendant's railway in front of an approaching street car, and that "while the motorman in charge of the car was a long way off from plaintiff, towit, more than 100 feet, he observed or could have observed" plaintiff's situation and that notwithstanding this fact, the motorman "negligently continued on his course with said car, without stopping or checking said car, and negligently came into collision with plaintiff's said horse and buggy," whereby she was thrown to the ground and injured.

2. *Contributory negligence; sufficiency of plea.*—Pleas seeking to set up contributory negligence on the part of plaintiff, in an action to recover damages for personal injuries, but which attribute to the plaintiff conduct which may or may not have been negligent, and fail to aver that such conduct was negligent, except as a conclusion of law resulting necessarily from the act or omission charged, are insufficient and subject to demurrer.

3. *Same; same.*—Pleas seeking to set up the contributory negligence of the plaintiff, in an action to recover damages for personal injuries, which do not with certainty impute to the plaintiff the omission of any duty or the commission of any act negligent or otherwise, are insufficient and subject to demurrer.

4. *Action to recover for personal injuries; admissibility of evidence; res gestae.*—In an action by a woman, to recover damages for personal injuries, testimony that the plaintiff cried all the afternoon of the accident and that she complained of pain the next morning after the accident, is admissible in evidence as a part of the *res gestae* of the injury.

[Montgomery Street Railway Co. v. Shanks.]

5. *Action against street railway to recover for personal injuries; testimony as to speed of car.*—In an action against a street railway company to recover damages for personal injuries alleged to have been sustained by reason of a collision between one of the defendant's cars and a buggy in which the plaintiff was sitting, it is competent for the plaintiff as a witness in testifying as to the speed of the car that collided with said buggy, to state that "it looked very fast to me."

6. *Action against street railway company to recover damages for personal injuries; when general affirmative charge properly refused.*—In an action against a street railway company to recover damages for personal injuries alleged to have been caused by the negligence of a motorman, where the evidence is in conflict as to whether the motorman did all within his power to stop the car in time to prevent the injury, the general affirmative charge requested by the defendant is properly refused.

7. *Same; charge as to motorman's knowledge as to result of collission.*—In such a case, where there was evidence tending to show that the motorman saw the situation of the plaintiff in time to have prevented the collision resulting in the accident, charges requested by the defendant which purport to determine the motorman's duty in respect of his stopping the car upon his certain knowledge that his failure to do so would result in a collision with the plaintiff's buggy, are erroneous and properly refused.

8. *Same; same.*—In such a case, where there is conflict in the evidence as to whether the motorman of the defendant in charge of the street car was guilty of negligence, and as to whether the plaintiff was guilty of contributory negligence, charges which assume either that the defendant was not chargeable with negligence or that the plaintiff was guilty of contributory negligence, are invasive of the province of the jury and are properly refused.

9. *Same; same.*—In such a case, charges which assume that plaintiff was under the burden of proving immaterial as well as material averments of the complaint, are erroneous and properly refused.

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

This was an action brought by the appellee, Mrs. E. A. Shanks, against the appellant, the Montgomery Street Railway Company, to recover damages for per-

sonal injuries, alleged to have been sustained by reason of the defendant's negligent operation of a street car, along a street of the city of Montgomery.

The complaint contained but one count, in which the plaintiff claimed $2,500 damages, and the substance of the averments of this count is sufficiently shown in the opinion.

The defendant demurred to the complaint, setting up in various ways the fact it does not set out a good cause of action.

The defendant pleaded the general issue and several special pleas, setting up contributory negligence. The demurrers to pleas numbered 3, 4 and 6, were overruled, and it is, therefore, unnecessary to set out these pleas at length. The other special pleas were in words and figures as follows: "2. And the defendant for further answer to said complaint says, that the plaintiff ought not to recover in this action, because she was guilty of negligence which contributed proximately to the injury to her complained of in this: That she allowed the buggy in which she was sitting with a horse attached thereto to remain standing in the street, diagonally across the street, with the hind wheel of the buggy within a few feet of the defendant's track, so that any backward movement of the horse would put the buggy wheel directly onto the defendant's track."

"5. And the defendant for further answer to said complaint, says that the plaintiff ought not to recover in this action, because she was guilty of negligence which contributed proximately to the injury to her complained of in this: That the horse which plaintiff was holding was afraid or skittish about the street cars, and yet plaintiff allowed said horse to remain upon the street which was very narrow, and that the horse became frightened at the car and backed the buggy onto the track in such close proximity to the car that the motorman in charge thereof was unable to stop the car before it struck the buggy."

"7. And the defendant for further answer to said complaint says that the plaintiff ought not to recover in this action, because she was guilty of negligence which

[Montgomery Street Railway Co. v. Shanks.]

contributed proximately to the injury to her complained of in this: That the horse which plaintiff was holding became frightened and backed the buggy onto the track in such close proximity to defendant's approaching car that the motorman in charge of said car was unable to stop the same before it struck the buggy.

"8.   Because the plaintiff was guilty of negligence which proximately contributed to the injury complained of in this, that she allowed said horse and buggy to stand or remain in dangerous proximity to the track of defendant, without having in charge thereof a competent driver, and in consequence thereof the said horse did move or back said buggy upon the track of defendant immediately in front of an approaching car and was struck.

"9.   For further answer to said complaint defendant says the plaintiff ought not to recover, because the plaintiff was guilty of negligence which contributed proximately to the injury complained of in this:    That had plaintiff urged or driven the horse forward, as she could have done, she could have avoided the injury.

"10.   Because plaintiff is guilty of negligence which contributed proximately to the injury complained of in this, that plaintiff failed to use any effort to drive said horse forward and off from said track.

"11.   Because the plaintiff was guilty of negligence which contributed to the injury complained of in this, that when said horse began to back said buggy toward defendant's track, she failed to use the whip at her command, in an endeavor to make said horse go forward or to in any manner urge said horse to move forward and away from said track."

To the second plea the plaintff demurred upon the following grounds:   "1.   It is not denied in said plea that the defendant saw the perilous condition of said horse and plaintiff, and that defendant negligently brought said car into collision with said horse and injured plaintiff.   2.   It is not denied that plaintiff used every effort in her power to prevent said horse and buggy getting on the track, and it is not denied that defendant negligently brought said car into collision with said buggy and injured plaintiff.   3.   It is not denied in said plea

that after defendant saw or could have seen the peril of plaintiff, the defendant negligently brought its car into collision with said buggy and injured plaintiff."

To the 5th and 7th pleas plaintiff demurred upon the same grounds as interposed to the second plea, and upon the following additional grounds: 1. It is not alleged that plaintiff knew said horse was afraid or skittish about cars. 2. It is not alleged what the motorman did or that he attempted to do anything to stop said car after seeing the buggy on the track.

To the 8th plea the plaintiff demurred upon the following grounds: "1. It is not shown how the lack of a competent driver contributed to plaintiff's injury. 2. It is not denied in said plea that after defendant saw or could have seen the perilous position of plaintiff, it did or attempted to do anything to avoid the injury to plaintiff. 3. It is not denied that defendant, after seeing the plaintiff's peril, could by the use of due diligence, have avoided injury to plaintiff."

To the 9th and 10th pleas the plaintiff demurred upon the following grounds: "1. The said plea does not deny that defendant, after seeing plaintiff's peril, did anything to avoid injury to her. 2. The fact that plaintiff failed to urge the horse forward did not excuse defendant for injuring her, if defendant after seeing her peril negligently brought said car into collision with said buggy as alleged in the complaint."

To the 11th plea the plaintiff demurred upon the same grounds of demurrer interposed to the 9th and 10th pleas and the following additional grounds: "2. The facts stated in said plea do not excuse the defendant from liability, if defendant, after seeing the peril of plaintiff, failed to use due diligence to prevent the injury. 3. The plea does not allege that defendant used due diligence to avoid and could not have avoided the injury by due diligence after seeing plaintiff's peril."

The demurrers to each of said pleas, as above set out, were sustained, and the cause was tried upon issue joined upon the remaining pleas.

Upon the trial of the cause the evidence for the plaintiff tended to show the following facts: The plaintiff

had been injured. She had received bruises back of the ear, abrasions on head, shoulder and arm. The lobe of her ear was almost severed. The ear had to be stitched on. These injuries required treatment. She suffered pain, and was confined to her house for at least a month. The plaintiff and Mrs. Hastings drove up to Miss Wilson's, on the south side of Mildred street. The horse and buggy stopped alongside of and parallel to the sidewalk with the horse's head to the west. Mrs. Hastings left the plaintiff sitting in the buggy and she was there with the reins in her lap when defendant's car came from the west approaching the horse and buggy. There was a switch right there. The car was running fast and turned into the branch of the switch next to where the plaintiff was. As the car turned into the switch, the horse began to show fright and to back. The car was then more than 100 feet away. The plaintiff cried out to the motorman. Mrs. Hastings waved at the motorman and called on him to stop. The motorman made no movement to stop the car. The buggy was backed on the track while the car was 100 feet away. The car struck the buggy and stopped. The plaintiff called to the motorman twice, the first time when the car was 100 feet away. There was nothing between the buggy and the car and nothing to prevent the motorman from seeing plaintiff's peril. When the horse backed, the plaintiff spoke to it, saying, "Whoa, Beauty." The horse backed slowly. It was 125 feet from the west end of the switch to the point of the collision. The plaintiff had her hands on the lines, which were lying loose in her lap. She did not slap the horse, nor do anything except to speak to the horse. The horse was backing several minutes before the collision. The motorman was standing on the front end of the car, looking straight forward, face towards the east. He did not apply the brakes, turn the electrical lever, or do anything else to stop the car.

The testimony for the defendant tended to show the following facts: The car, in going west, passed on the north track of the switch. The buggy was there at that time with Mrs. Shanks in it. A few minutes afterwards

the car returned going east, and passed on the south branch of the switch, next to where the buggy was. One witness for the defendant swore that the car was within ten or fifteen feet of the horse when it became frightened and began to back. The horse and buggy were not standing parallel with the street, but a little across Mildred street. The buggy backed diagonally to the point of collision. The motorman was doing his best to stop the car. He was applying the brakes. When he ran into the west end of the switch he had to set up his brakes. After the car passed the end of the switch the motorman released his brakes some, and was gradually setting them up again. The car had passed into the switch before the horse became frightened. The motorman did not have time to do anything else because the collision happened too quick. The motorman could not reverse the current without releasing the brakes, and if he had done that the car would have gone forward with greater speed. The car ran a short distance after striking the buggy. The plaintiff ran in the house and said she was not hurt. The car had come into the switch some little distance, between 20 and 40 feet, before the horse showed fright. The conductor did nothing, but the motorman did all he could. It is down grade enough to make a car roll without electricity four miles an hour. The horse did not begin to back until plaintiff grabbed up the lines. The car was about 50 feet from the west end of the switch when the motorman saw the horse begin to back on the track. The collision occurred 12 to 15 feet from the east end of the switch. The car could have been stopped within ten or fifteen feet. The front of the car was nearly abreast of the horse when he threw up his head. The plaintiff grabbed the lines and began to pull the horse back. The buggy was backed about four feet. The car at that time was about four feet from the point of the collision, and the buggy and car met. The motorman saw the buggy when he went west on Mildred street, and again when he entered the west end of the switch going east. The horse showed no signs of fright until the car got nearly abreast of him. Nobody called to him until the car struck the buggy. He was

looking ahead all the time. The distance between the curb and the south branch of the switch was twelve feet. He had the brakes partially set when the horse became frightened, and he continued to apply them. The car was running about four miles an hour. The east end of the car was opposite the horse's head, and before the car could get by the horse backed the buggy on the track. The car was twenty feet away when the horse began to prick up his ears. The horse was standing 75 or 100 yards east of the west end of the switch. The collision occurred about ten feet east of where the horse was standing. The buggy was diagonally across Mildred street with just enough room for the car to pass.

The general manager, Scott, swore that Mildred street was 48 feet between curbs, and that there was about 12 feet between the south curb and the south branch of the switch. The quickest way to stop the car is by putting on the brakes. The electricity cannot be reversed without stopping the car, nor when the brakes are set. The motorman was competent. The distance between the east and west ends of said switch is 189 feet.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges: (1.) "The court charges the jury that if they believe the evidence in this case, they will find for the defendant." (2.) "The court charges the jury that under the evidence in this case, they cannot find a verdict in favor of the plaintiff." (4.) "The court charges the jury that if they are not reasonably satisfied from the evidence that the motorman in charge of the defendant's car knew, while he was about 100 feet away from the horse and buggy in question, that by proceeding with his car he would strike or collide with the buggy in which plaintiff was riding, then your verdict should be for the defendant." (5.) "The court charges the jury that before you can find for the plaintiff in this case, you must be reasonably satisfied from the evidence that the motorman in charge of the car which collided with the buggy in which plaintiff was riding, knew when he was about 100 feet away from said buggy that

if he proceeded with his car, a collision would happen."
(6.) "The court charges the jury that if they believe
from the evidence that the speed of the car was checked
after defendant's motorman saw the horse and buggy of
plaintiff backing towards the track, and before he struck
the buggy, then their verdict should be for the defend-
ant." (7.) "The court charges the jury that if they
believe from the eveidence that the plaintiff could have,
by the use of reasonable care and diligence, driven or
urged said horse off of said track of defendant, or pre-
vented his backing thereon, then their verdict should be ·
for the defendant." (8.) "The court charges the jury
that if they are reasonably satisfied from the evidence
that had the plaintiff used the whip upon said horse, or
clucked to him, or struck him with the lines, she could
have caused him to move off the track of defendant, or
kept him from backing the buggy thereon, then the de-
·fendant is not liable in this action." (9.) "The court
charges the jury that the burden is upon the plaintiff to
reasonably satisfy you by a preponderance of the evi-
dence that the horse attached to the buggy in which the
plaintiff was riding began to back said buggy in the di-
rection of defendant's track, when the car in question
was about 125 feet. distant from where said buggy was
standing, and that the plaintiff did all she was capable
of doing to control the movements of said horse, that
the motorman in charge of said car knew, when he was
about 100 feet away from said buggy, that by proceeding
along the track, he would bring about the collision, and
that the motorman did not stop or check the speed of
said car before the collision occurred; and if, after look-
ing at all the evidence in the case, you are not reasonably
satisfied by a preponderance of the evidence of all these
facts, then your verdict should be for the defendant."
(12.) "The court charges the jury that it was the duty
of the plaintiff when she discovered the car approach-
ing, to use all reasonable efforts to keep said horse off
the defendant's track, and if she failed in this particu-
lar, then the defendant is not liable in this action."
(17.) "The court charges the jury that if they are reas-
onably satisfied from the evidence that the plaintiff by

the use of the lines attached to the horse, could have quieted or controlled him in such way as to have prevented the buggy from backing upon the track, the law charged her with the duty to do this, and if she failed to do it, and could have done it, the verdict should be for the defendant." (21.) "The court charges the jury that unless they believe from the evidence that the plaintiff made all the effort she was capable of, and did all she could to control the movements of said horse, and was unable to do so, then they must find their verdict for the defendant." (22.) "The court charges the jury that if they believe from the evidence that all Mrs. Shanks did to control the horse which was attached to the buggy was to say to the horse, 'Whoa, Beauty,' then they must find their verdict for the defendant." (23.) "If the jury believe that Mrs. Shanks could have used the whip on said horse and thereby have made said horse go forward and avoided the accident, then they must find their verdict for the defendant." (24.) "If the jury believe from the evidence that there was a whip in the whipstand in the buggy in convenient reach of Mrs. Shanks. and that she did not use the whip on the horse to make it go forward, and did not cluck to or use any other command to the horse to go forward, then they must find their verdict for the defendant." (25.) "If the jury believe from the evidence that Mrs. Shanks could have urged the horse forward by commanding it to go forward or clucking to it or using the whip on it, then they must find their verdict for the defendant." (26.) "The court charges the jury that before the plaintiff can recover in this case, the jury must be reasonably satisfied from the evidence that the plaintiff was on or about the 17th day of November, 1900, sitting in a buggy on Mildred street in front of the house known as No. 227 Mildred street, in the city of Montgomery, and that attached to a buggy was a horse, and that the horse and buggy were in the sole charge and under the control of the plaintiff, and that said horse and buggy was far enough from the line of defendant's street railway track to enable a car passing thereon, either east or west, to pass said horse and buggy without colliding with or injuring said horse

and buggy, or the plaintiff, and that while said plaintiff was so standing in said position, a certain car in charge of the officers or agents of the defendant, approached the point coming toward the east and towards the point where plaintiff was sitting in said buggy, and that the names of said officers or agents are unknown to the plaintiff, and that when said car arrived at a point about one hundred and twenty-five feet distant from where said buggy was standing, said horse became restive, and began to back said buggy in the direction of defendant's railway; that plaintiff made all the efforts that she was capable of, and did all she could to control the movements of said horse, but was unable to do so, and said horse continued to back said buggy in which the plaintiff was sitting, until it backed onto the track of said railway, and into a position, that a car running east on said track would inevitably collide with said buggy and horse and produce probable damage to them; that the motorman in charge of said car when he was a long way off from the plaintiff, more than 100 feet, he observed or could have observed said fact, that said horse was beyond the control of plaintiff, and that said buggy was being backed on or so near the track over which this car was to pass as to bring about a collision between them, if the car attempted to pass; that said motorman did not stop said car nor check the speed thereof; but on the contrary, continued on his course with said car without either stopping or checking said car, and that said car continued to move and that the collision occurred between it and the buggy; that the car came in collision with the plaintiff's person, that a portion of the car struck her on the arm and head."

The defendant separately excepted to the court's refusal to give each of the foregoing charges.

There were verdict and judgment in favor of the plaintiff, assessing her damages at $400. From this judgment the defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

C. H. ROQUEMORE, LOMAX, CRUM & WEIL, for appellant, cited 8 Amer. & Eng. Encyc. of Law, (2d ed.), 651; *McDonald v. Montgomery Street Railway*, 110 Ala. 161.

WATTS, TROY & CAFFEY and P. C. MASSIE, *contra*. The demurrer to the complaint was properly overruled. *S. & N. R. R. Co. v. Sullivan*, 59 Ala. 272; *Gothard v. A. G. S. R. R. Co.*, 67 Ala. 114.

The demurrer to each of the pleas numbered 2, 5, 7, 8, 9, 10 and 11, were properly sustained.—*S. & N. R. R. Co. v. Sullivan*, 59 Ala. 272; *Gothard v. A. G. S. R. R. Co.*, 67 Ala. 114.

The testimony of the plaintiff, which was objected to by the defendant, as to her crying and suffering pain, was admissible in evidence.—*Steiner v. Tranum,* 28 Ala. 301.

The testimony of the plaintiff that the speed of the train looked very fast to her, was competent and admissible.—*Birmingham &c. R. Co. v. Wilmer*, 97 Ala. 165; *State v. Houston*, 78 Ala. 576; *K. C., M. & B. R. R. Co. v. Crocker*, 95 Ala. 412.

SHARPE, J.—By this action plaintiff seeks to recover for personal injuries claimed to have been sustained through defendant's negligent operation of a street car.

In the complaint it is alleged in substance, that on a street in Montgomery, a horse harnessed to a buggy in which plaintiff was sitting, backed the vehicle on or near to defendant's railway in front of an approaching car which was in control of defendant's motorman, and that "while the motorman in charge of the car was a long way from plaintiff, to-wit, more than one hundred feet, he observed or could have observed" her situation, and that he "negligently continued on his course with said car without stopping or checking said car, and negligently came into collision with plaintiff's said horse and buggy" whereby she was thrown to the ground and injured. The complaint stated a cause of action grounded on simple negligence, and was not open to any objec-

tion raised by the demurrer.—*So. R. R. Co. v. Bush*, 122 Ala. 470; *L. & N. R. R. Co. v. Markee*, 103 Ala. 160.

Pleas 2, 5, 8, 10 and 11 each attribute to plaintiff conduct which may or may not have been negligent without averring that the same was negligent, except as a conclusion of law resulting necessarily from the acts or omission charged, so that proof of such acts or omissions would have sustained the pleas without regard to whether they were in fact negligent and without leaving that vital question to the jury who alone were competent to determine it. The demurrers to the pleas respectively were properly sustained.—*Montgomery St. Railway v. Hastings*, 138 Ala. 432.

Pleas 7 and 9 were each bad in that they do not with certainty impute to the plaintiff the omission of any duty or the commission of any act negligent or otherwise.

Crying is often symtomatic of pain, and in connection with the other evidence of actual hurts received by plaintiff, the fact that she cried all the afternoon of the accident, was admissible in evidence as of the *res gestae* of the injury, as was also the fact that she complained of pain the next morning.—*Birmingham Ry. & Electric Co. v. Hale*, 90 Ala. 8. There was no error in allowing the plaintiff, when testifying as to the speed of the car, to say "it looked very fast to me." This expression was but a statement indicative of the speed as it appeared to her and not a statement of her opinion.—*Birmingham Ry. & Elec. Co. v. Franscomb*, 124 Ala. 621.

Whether the motorman was guilty of negligence proximately causing the injury, as well as whether the plaintiff was chargeable with such negligence, were questions which under the evidence were proper for the jury's determination, and charges 1 and 2 would have withdrawn these questions from the jury. Charges 4 and 5 each improperly purport to hinge the motorman's duty in respect of stopping the car, upon his certain knowledge that his failure to stop would result in a collision with the buggy. Charges 6, 7, 8, 12, 17, 21, 22, 23, 24 and 25, each upon the facts hypothesized improperly assumes either that defendant was not chargeable with negligence, or that plaintiff was guilty of contributory

negligence; thereby invading the province of the jury. Charges 9 and 26 were bad in assuming that plaintiff was under the burden of proving immaterial as well as material averments of the complaint.

Affirmed.