MARION FISHBURN, by his next friend, Appellee, v. THE
    BURLINGTON & NORTHWESTERN RAILWAY COMPANY
    and the BURLINGTON & WESTERN RAILWAY COMPANY,
    Appellants.

**Railroads:** NEGLIGENCE: SNOW FENCE: EVIDENCE. In an action for
1   injuries to a child by the falling of a snow fence erected by a
    railway company on the premises of the child's father, the
    evidence is held to require a submission of defendant's negli-
    gent erection of the fence to the jury.

**Evidence:** PHYSICAL PAIN. Evidence that a child of tender years
2   would cry out and weep as if in pain and otherwise manifest
    physical suffering, is admissible in an action for injury to the
    child.

**Life expectancy:** EVIDENCE. The probability that a child will fol-
3   low the avocation of his father is sufficient to admit proof of
    the father's income on the question of damages for injury to
    the child.

**Negligence:** PROXIMATE CAUSE: INTERVENING ACT. Where there
4   was evidence that a railway company had so negligently
    erected a snow fence upon the premises of plaintiff's father
    that it blew down, and plaintiff, a child of immature years
    and a younger brother set it up, when it again blew over
    causing plaintiff's injuries, it cannot be said as a matter of
    law that plaintiff's act was such an independent intervening
    cause as to relieve defendant of liability for its negligent erec-
    tion of the fence

**Negligence:** REASONABLE CARE. A child of tender years is not to
5   be held, as a matter of law, guilty of negligence, but is charge-
    able with such a degree of care as one of his age would be
    reasonably expected to exercise under similar circumstances.

**Instruction.** Evidence that plaintiff's nervous system was seriously
6   injured, justified an instruction that if the jury found a
    "permanent impairment and destruction of the nervous system
    and the functions thereof," etc., as the term "destruction"
    did not convey a sense of total loss but a permanently im-
    paired condition.

Justices Bishop and McClain dissenting.

*Appeal from Washington District Court.*— HON. W. G. CLEMENTS, Judge.

TUESDAY, MAY 9, 1905.

ACTION to recover damages for personal injury. Judgment for plaintiff, and defendants appeal.— *Affirmed.*

*C. J. Wilson* and *H. & W. Scofield,* for appellants.

*H. M. Eicher* and *S. W. & J. L. Brookhart,* for appellee.

WEAVER, J. At the time of the injury complained of, plaintiff was a child of the age of about six years. He lived with his father upon the residence property owned by the latter, bordering upon the defendant's right of way. This residence lot was inclosed by a fence, and that portion of it adjoining the right of way was used as a garden. By the consent of the father the railway company had for several years (during the winter season, at least) maintained a snow fence within the limits of his inclosure. The boundary fence between the right of way and the garden appears to have been constructed of posts and wire. The snow fence was made of boards, in panels of 14 or 16 feet in length. These panels were set on top of the ground, just inside the garden inclosure, and leaned up against the wire fence. To hold them in place, the ordinary method employed was to fasten the ends of the panels together with wire loops of some kind, and attach the top board or boards in the same manner to the fence posts. The evidence tends to show that a snow fence was thus constructed in the fall of 1899. On April 8, 1900, the plaintiff, with a brother about a year younger than himself, went into the garden to look at some pieplant roots or sprouts near the fence; and while there the wind blew over one or more of the board panels, one of which fell upon the plaintiff, injuring him very severely. The negligence charged against the defendant consists in

its alleged failure to give the panels a sufficient slant to prevent their falling or being blown inward upon the garden, and in fastening them to the standing fence with rotten, defective, and insecure wires or other material. There was evidence tending to sustain the charge that the wire made use of for this purpose was old, rusty, and defective. On the part of the defendant there was evidence tending to show that the fence had been fastened in the preceding November with new, bright, galvanized wire, and that all reasonable precautions had been taken to build the snow fence securely. There was also evidence from which the conclusion might have been reached that earlier in the day of April 8th these children had found the panels blown down, and had themselves lifted them back into position against the wire fence, from which they were again blown down at the time of the accident to plaintiff. The facts thus stated, with such as may be incidentally referred to in the further progress of this opinion, are sufficient to indicate the bearing of the several points presented by the appeal.

I.   It is argued that a verdict should have been directed in favor of the defendants. To this we cannot agree. We cannot say, as a matter of law, that no actionable negligence was shown. It was an implied condition

1. NEGLIGENCE: snow fence; evidence.

of the permission to erect the snow fence on private grounds that it should be constructed with reasonable care to avoid injury to persons rightfully using the premises. Defendants must be held to have known that the premises, and every part thereof, not actually occupied by the fence, would continue to be used by the owner and the members of his family with the same freedom and frequency as if the fence did not exist. That the Fishburn family included several immature children playing about the premises was known to the agents and employés of the defendants, and that these children might rightfully go or be sent to any part of the garden must have been anticipated by them. But even if such knowledge were not shown, the

duty was no less imperative to erect and fasten the fence in such reasonably secure manner as not to menace the safety of any person, child or adult, rightfully being within reach of injury from a falling panel. The case is not one where a person has erected a fence or other structure on his own premises. In such case the owner is not ordinarily required to expend time or care in considering the safety of mere trespassers. Here the plaintiff was not a trespasser. He was where he had a right to be, and where the defendants were bound to anticipate he might be. The license to build the fence was necessarily a license to erect it with reasonable regard to the safe and proper use of the remainder of the premises. They were bound to know that a panel of boards leaned loosely against a fence was morally sure to be blown down in the first windstorm, and to guard against it by some reasonably efficient method of fastening to the posts or the fence which was utilized for its support. While the method and means actually employed in such fastening is a matter of dispute, there is, as we have already noted, sufficient evidence to support a finding that the wires with which these panels were attached to the line fence were old, rusty, and unfit for this purpose. This conclusion is strengthened by the fact that the panels did blow over — a result which ordinarily would not follow, had they been well fastened to the panels, with new galvanized wire, within a period of four or five months, as claimed by the defendants. It is true, they may have been unfastened or removed without fault on defendants' part, but there is nothing in the testimony to show such a state of facts. It is very clear that the question of defendants' alleged negligence was properly left to the jury.

II.    Error is assigned upon the ruling of the trial court in admitting the testimony of witnesses to the effect

2. EVIDENCE: physical pain. that for a considerable period after his injury the plaintiff would cry out and weep as if in pain, and would otherwise give manifestations of phys-

ical suffering, and complain from time to time that his broken limb hurt him. Under the frequent holdings of this court, there was no error in refusing to exclude this evidence. While there is a sense in which this class of evidence may be said to partake of hearsay and conclusion, it comes within the well-recognized exception which permits it to be given out of regard to the limitations of human language, which make it impossible to describe in apt terms all the manifestations upon which conclusions as to health, sickness, pain, and suffering are based. *Buce v. Eldon,* 122 Iowa, 92; *Reininghaus v. Association,* 116 Iowa, 364; *Goldthorp's Estate,* 94 Iowa, 343; *Yahn v. Ottumwa,* 60 Iowa, 429; *Bailey v. Centerville,* 108 Iowa, 20; *Stone v. Moore,* 83 Iowa, 186; *Kostelecky v. Scherhart,* 99 Iowa, 120; Abbot's Trial Evidence (2d Ed.) 408; *Cleveland & C. R. R. v. Carey* (Ind. App.), 71 N. E. Rep. 244; *R. Co. v. Schmidt* (Ind. Sup.), 71 N. E. Rep. 201; *R. Co. v. Shanks,* 139 Ala. 489. (37 So. Rep. 166). This rule is peculiarly applicable in the case of a child of such tender years as to render simulation and fraud improbable.

III. The court permitted the father of plaintiff to testify that he was a day laborer in a planing mill, and that his earnings were about $2 per day. This, it is said, was

3. Life Expectancy: evidence. prejudicial error, in that it tended to excite the sympathy of the jury in favor of the plaintiff, as the child of poverty engaged in a contest with a rich corporation. There seems to be no good ground for this contention. The plaintiff was still too young to have a fixed vocation in life. His damages, if entitled to recover, depended in some degree upon the business or occupation he would have been likely to adopt, had he not been injured, and upon the extent to which his injury impaired his ability or capacity to earn money in such business or occupation. While there is, of course, no certainty that the child would have adopted the vocation of his father, this court has held that the probability of such choice is suf-

ficiently strong to permit evidence of this nature as an element to be considered in the computation of damages. *Walters v. R. R.,* 41 Iowa, 71; *Eginoire v. Union Co.,* 112 Iowa, 558; *Fish v. R. R.,* 96 Iowa, 707. Many other exceptions are urged to rulings upon the admission and exclusion of testimony, which cannot be discussed in detail without unduly extending this opinion; but, after a reading of the entire record, we think no reversible error was committed by the trial court in this respect.

IV. The defendants asked the court to instruct the jury as follows:

If you find from the evidence that prior to the accident the panel of fence which caused the injury to plaintiff had fallen to the ground from some unknown cause, and that **4. NEGLIGENCE:** the plaintiff, finding it there, with the assistance **proximate cause; intervening act.** of a brother raised the same to near its former position, and left it there without fastening, and that later on the same day, while walking near the panel and on the land of their father, from the wind or some other unknown cause that panel fell upon the plaintiff, causing the injuries complained of, or some of them, then plaintiff cannot recover for those injuries, and your verdict should be for the defendants.

This request was overruled. Upon the fact proposition here referred to, the court, upon its own motion, said to the jury:

If you find from the evidence that the plaintiff and his brother, the same day the accident occurred, raised a panel of the snow fence that had fallen, and leaned it against the permanent fence or the other panels of the snow fence, and the same was left by plaintiff and his brother in that condition, without any fastening to the permanent fence, and afterwards the same day the plaintiff went near such panel, and the same fell over on him, and if you find that plaintiff had sufficient capacity to understand and appreciate the danger surrounding him at the time of the accident, then he would be guilty of contributory negligence, and in that event he cannot recover, notwithstanding defendants

may have been negligent in the erection and construction of the snow fence.

At the request of plaintiff, an additional instruction was given as follows:

You are further instructed that if you should find the plaintiff, Marion Fishburn, did, prior to the time of the accident, aid in raising and placing as aforesaid the panel that fell upon him, or that contributed to the falling of the panel as alleged, you shall then consider the childish instincts of the plaintiff, his mental powers, judgment, discretion, and want of discretion at his age, and you will charge and hold him responsible only to the degree of caution and prudence under the same conditions generally possessed and exercised by a child of his age and experience under all the circumstances as disclosed by the evidence in the case.

The instructions given and refused, as here noted, require a consideration of the question of the proximate cause of the injury to plaintiff. It is argued by the appellants that, even if defendants were negligent in the construction of the fence, that negligence ceased to be a source of danger to any one when the panels were blown down or fell to the ground; and if the fallen panels were, without the knowledge or agency of the defendants, lifted back against the wire fence, from which position they fell upon the plaintiff, such act constitutes a sufficient intervening cause which relieves them from liability for the resulting injury. We have already reached the conclusion that there was evidence to sustain a finding of negligence on part of the defendants in construction of the snow fence, and that if, by reason of such negligence, the fence fell or was blown upon the plaintiff without fault chargeable to him, he is entitled to recover. From this starting point, let us proceed to inquire how the situation would be affected if the jury believed, as it might have done, under the evidence, that plaintiff and his young brother had found the panels upon the ground,

and lifted them back into or near their original position, before the accident. In other words, assuming the negligence of the defendants in the construction of the snow fence, would the act of plaintiff and his brother in lifting the fallen panels and restoring them to their place without proper fastening be such an independent intervening cause as will break or interrupt the causal connection between defendants' negligence and the plaintiff's injury? The mere fact that another cause intervened between defendants' negligence and plaintiff's injury is not enough to relieve the former from liability if the intervening act was of such nature that its happening was to have been apprehended. Stated otherwise, the intervening cause will not relieve the original negligence of its actionable quality if the occurrence of the former might have been anticipated. Thompson, Negligence (1st Ed.) 1089; *Sheridan v. R. R.,* 36 N. Y. 39 (93 Am. Dec. 490); *Osage v. Larkin,* 40 Kan. 206 (19 Pac. Rep. 658, 2 L. R. A. 56, 10 Am. St. Rep. 186); *Derry v. Flitner,* 118 Mass. 131; *Hill v. Winsor,* 118 Mass. 259; *Schumaker v. R. R.,* 46 Minn. 39 (48 N. W. Rep. 559, 12 L. R. A. 257); *Lynch v. Nurdin,* 1 Q. B. 29; *Birge v. Gardner,* 19 Conn. 507 (50 Am. Dec. 261). For instance, in *Binford v. Johnston,* 82 Ind. 426 (42 Am. Rep. 508), the defendant sold loaded cartridges to two young boys. With these cartridges the boys loaded a toy pistol already in their possession, which weapon they left upon the floor of their home. Afterward a younger brother, six years of age, picked up the pistol and discharged it, receiving a wound from which he died. Here, in one sense of the word, the original negligence of the defendant had ceased to be operative. He did not furnish or load or discharge the pistol. The boys to whom he had sold the cartridges, and were the intermediate agents in loading the weapon, had discarded it. Lying where it had been left by them, it was harmless. The child, in picking it up, became an active agent in its own destruction. But conceding all this, the court held the defendant liable,

saying: "Although the act of the lad intervened between the original wrong and the injury, we cannot deny a recovery if we find that the injury was the natural or probable result of appellant's original wrong."

While the facts in the cited case present a more flagrant act of negligence than is charged against the appellants in the case before us, the difference is one of degree only. The legal principle which applies to the former is equally applicable to the latter. We cannot say, as a matter of law, that the lifting of the fallen panels back to their original position was an occurrence which the defendants could not and ought not to have anticipated. So far as appears from the record, defendants had no right to occupy any part of the garden except that which was covered by the snow fence, and they must have foreseen that the panels could not fall without encroaching upon that part of the grounds over which they had no control. If the owner of the garden or any person of mature years interested therein had discovered the prostrate panels, and restored them to their position against the wire fence, and had thereafter been injured by reason of such panels being again blown down, he might possibly be precluded from a recovery of damages on the ground of contributory negligence; but we feel very certain his act would not be such an independent intervening cause, disconnected from the primary act complained of, and not reasonably to have been anticipated by the defendants, as would be required to relieve the latter from liability for negligence in the original construction. Assuming that the fence had already fallen when the children first visited the place on the day of the accident, the situation would indicate that the panel must have been lying upon the pieplant which they were seeking. They had the right to remove the obstruction thus created, and the natural suggestion, to the mind of a mature person even, would be to lift the fallen section back to its place against the wire fence, where the defendants had placed it. Indeed, it is hardly going too

far to say that the situation thus created by the defendants was in the nature of an invitation to do the very thing which it is claimed these children did. At any rate, we think it was a fair question for the jury whether such acts and such results were not reasonably to have been anticipated by the defendants as likely to follow a negligent construction of the snow fence. The liability of a person charged with negligence does not depend upon the question whether, with the exercise of reasonable prudence, he could or ought to have foreseen the very injury complained of; but he may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act. *Gilson v. Delaware C. Co.,* 65 Vt. 213 (26 Atl. Rep. 70, 36 Am. St. Rep, 810); *Hill v. Winsor,* 118 Mass. 251; *Bunting v. Hogsett,* 139 Pa. 363 (21 Atl. Rep. 31, 33, 34, 12 L. R. A. 268, 23 Am. St. Rep. 192); *Higgins v. Dewey,* 107 Mass. 494 (9 Am. Rep. 63); *Brown v. R. Co.,* 54 Wis. 342 (11 N. W. Rep. 356, 911, 41 Am. Rep. 41); *Louisville R. Co. v. Wood,* 113 Ind. 544 (14 N. E. Rep. 572, 16 N. E. Rep. 197); *Savage v. R. Co.,* 31 Minn. 419 (18 N. W. Rep. 272); *R. Co. v. Kellogg,* 94 U. S. 475 (24 L. Ed. 256). See, also, *Burk v. Creamery P. Co.* 126 Iowa 730. In his note to the *Gilson Case, supra,* Mr. Freeman quotes from this court, *West v. Ward,* 77 Iowa, 323, as follows: " When there is danger of a particular injury which actually occurs, we must surely say that it is the usual, ordinary, natural, and probable result of the act of exposing the person or thing injured to the danger." The annotator adds: " If we construe this principle with the one stated in the preceding paragraph [that the injury must be one which might reasonably have been anticipated], the result seems to be that when the act complained of was such that, in view of all the circumstances, it might not improbably cause damage of some kind, the doer of the act cannot shelter himself under the defense that the actual consequence was one which rarely follows from that par-

ticular act." To the same effect see *Quigley v. R. R.*, 142 Pa.
388 (21 Atl. Rep. 827, 24 Am. St. Rep. 504); *Henry v.
Dennis*, 93 Ind. 452 (47 Am. Rep. 378); *Page v. Bucksport*,
64 Me. 51 (18 Am. Rep. 239); *Sauter v. R. R.*, 66 N. Y.
50 (23 Am. Rep. 18).

Counsel have discussed the question whether the inter-
vening cause which will serve to relieve the primary negli-
gence of its actionable quality must be an intelligent, re-
sponsible cause. Affirming this proposition, it
is the contention of the appellee that the jury
were at liberty to find that these children were
too young and inexperienced to be charged with negligence,
or otherwise held responsible for their act in replacing the
fence, if they did replace it, and that such act would not
prevent a recovery against the defendants if the charge of
negligence in the construction of the fence has been estab-
lished. That a young child is held to exercise only such
care for its own protection as may reasonably and fairly be
expected from one of its years and experience is too well
settled to admit of argument. *Eddington v. R. R.*, 116 Iowa,
444; *R. R. v. Becker*, 84 Ill. 483. No court of modern times
has gone to the extent of saying that under any state of
circumstances a child of six years may be held guilty of
negligence, as a matter of law. The instructions by the trial
court to the jury upon this feature of the case were correct,
and are not seriously questioned by the appellants. If, then,
the jury may have found that the children were too young
and immature to be charged with contributory negligence,
it would seem to savor of hairsplitting to say that the same
act which in an adult would be contributory negligence may,
when done by a young child incapable of negligence, be
treated as an independent intervening cause, depriving him
of the right to recover for an injury which would not have
happened but for the original negligence of the defendant.
If the snow fence was negligently constructed, and the plain-
tiff had been a person of mature years, who had restored

*5. NEGLIGENCE:
reasonable
care.*

a fallen panel to its upright position, thus contributing to his own injury by a subsequent fall of the same panel, no lawyer would think of relying upon his act as an intervening cause interrupting the causal connection between the original negligence and the resulting injury, except so far as all contributory negligence may be treated as intervening cause. Under such circumstances, the defense would rely solely upon the proposition that plaintiff had been guilty of contributory negligence; and, in our judgment, the exigencies of the defense in a case where the childhood of the plaintiff renders reliance upon contributory negligence for the avoidance of liability impracticable will not justify the court in treating the child's act as an independent cause sufficient to relieve the original negligence of the defendant of its actionable quality. The intervening cause to which the law has reference is one which moves from some source independent of the plaintiff and defendant. It is unnecessary here to discuss the varying definitions of " proximate cause " and " intervening cause." Indeed, like many other familiar phrases of the law, they are probably not capable of definition in terms which will be applicable in all cases. The approved doctrine is sufficiently summarized in *Harrison v. Berkley,* 1 Strob. (S. C.) 525 (47 Am. Dec. 578), where it is said that the natural and proximate consequences of a wrongful act, for which action will lie, are all those which are " not controlled by the unforeseen agency of a moral being capable of discretion, and left free to choose, or by some unconnected cause of greater influence." For these, it is said, " a wrongdoer must generally answer, however small was the probability of their occurrence."

No leading English case has been oftener cited with approval by our courts than *Lynch v. Nurdin, supra.* There the defendant negligently left his horse and cart standing unfastened in the public street. A child climbed into the cart, when another child set the animal in motion, upsetting the vehicle. In the resulting accident, the first child was

injured, and action was brought against the owner of the horse and cart to recover damages. It was there held that by reason of its youth the injured child was not chargeable with contributory negligence, and that the act of the other child in causing the animal to move was not such an intervening cause of the accident as to relieve the defendant. The same principle controls the decision in *Binford v. Johnston, supra,* decided by the Indiana court. So, also, in *Abbott v. McFie* and *Hughes v. McFie,* 2 Hurl. & G. 744. In these cases the defendant's servants negligently stood a heavy shutter on end, with the top leaning against the outer wall of a building. A small child meddled with the shutter, causing it to fall, injuring himself and another child standing near. Notwithstanding the fact that the shutter was on the premises of its owner, and was entirely harmless so long as it was left undisturbed; and notwithstanding the fact that the fall was occasioned by the intervening, unauthorized act of a trespassing child, the other child who was thus injured was allowed to recover damages. In *Bridge v. Goodam,* 5 C. & P. 190, the defendant left his cart and horse standing unsecured in the street. A person passing by struck the horse, causing it to back the cart against the plaintiff's window. It was urged in defense to an action for damages that the proximate cause of the injury was not the negligence of defendant, but the wrongful act of the third person who struck the horse; but Lord Tindal held otherwise, and permitted a recovery. In *Clarke v. Chambers,* 3 Q. B. D. 327, the cases are thoroughly reviewed by Chief Justice Cockburn, and the doctrine of *Lynch v. Nurdin* expressly approved. The defendant negligently obstructed a carriageway by a bar armed with spikes, and placed across the track. Some third person, having occasion to use the carriageway, removed the bar, and stood it upright in the adjacent footpath. The plaintiff, traveling that way in the dark, came in collision with the obstruction thus created, and was injured. It was held that the act of the third person, though

done without the knowledge or consent of the defendant, was something which might reasonably have been anticipated, and did not affect the defendant's liability. The theory upon which the action was prosecuted was expressly approved by the court, and is stated in these words: "As the act of the defendant in placing a dangerous instrument on the road had been the primary cause of the evil, by affording the occasion for its being removed, and thus causing the injury to the plaintiff, he was responsible in the law for its consequences." If these cases were correctly decided — and we think they have the support of the great weight of authority and are sound in principle — and the act of the man who struck the standing horse, or the man who placed the spiked bar in the footpath, was not sufficient to interrupt the causal connection between the primary negligence of the defendant and the injury to the plaintiff, there can be no rule or reason for holding that the very natural act of young and irresponsible children in replacing the panel in the fence from which it had fallen will serve to relieve the defendants, as a matter of law, from any liability with which they might otherwise be charged on account of negligence in the original construction of the fence.

For other cases where the intervening act of a child has been held insufficient to prevent recovery, see *True v. Woda*, 201 Ill. 315 (66 N. E. Rep. 369); *Dixon v. Bell*, 5 M. & S. 198; *Harriman v. R. R.*, 45 Ohio St. 11 (12 N. E. Rep. 451, 4 Am. St. Rep. 507); *Kopplekom v. Pipe Co.*, (Colo. App.) (64 Pac. Rep. 1047, 54 L. R. A. 284); *Lane v. Atlantic Works*, 111 Mass. 136.

That the intervening cause which will serve to relieve the original negligence of its actionable quality must be a responsible cause, appears to be well established. Among the numerous authorities upon this point, see, in addition to those already cited: Shearman & Redfield's Negligence, sections 31, 32, 36, 37; Barrow's Negligence, page 21;

Wharton's Negligence, sections 87, 88; 1 Thompson's Negligence, section 64; *Lowery v. R. R.*, 99 N. Y. 158 (1 N. E. Rep. 608, 52 Am. Rep. 12); *Page v. Bucksport*, 64 Me. 51 (18 Am. Rep. 239); *Lundeen v. Livingston*, 17 Mont. 32 (41 Pac. Rep. 995); *Gilson v. Canal Co.*, note 26, 36 Am. St. Rep. 836.

In *Birmingham R., L. & P. Co. v. Hinton* (Ala.), 37 So. Rep. 635, we have a very late case which is quite parallel in principle with the one at bar. The plaintiff, an infant of tender years, being in a house which was set on fire by the negligence of the defendant, escaped therefrom or was carried outside to a place of safety, from which he returned to the room from which he had been taken, and was severely burned before being finally rescued. He was too young to be charged with contributory negligence. It is there held that the act of the child in returning to the burning building was the "natural sequence" of the defendant's wrong, and that plaintiff was entitled to recover.

Having a material bearing upon the application of the doctrine or rule of proximate cause is the other established proposition that the intervening influence of natural forces in their normal and usual manifestations, though assisting in bringing about the injury, does not interrupt the line of causation. Thus it has been held that a wind, unless it be of an extraordinary character, is not an intervening cause. *Ins. Co. v. Tweed*, 7 Wall. 52 (19 L. Ed. 65); *Poeppers v. R. R.*, 67 Mo. 715 (29 Am. Rep. 518). So, also, of a rainfall (*Johnson v. Friel*, 50 N. Y. 679) and the melting of snow (*Smethurst v. Church*, 148 Mass. 261, 19 N. E. Rep. 387, 2 L. R. A. 695, 12 Am. St. Rep. 550). Akin to the cases here cited are those in which the acts of frightened or unrestrained animals are held not to constitute an intervening cause. *McDonald v. Snelling*, 14 Allen, 290 (92 Am. Dec. 768); *Lowery v. R. R.*, 99 N. Y. 158 (1 N. E. Rep. 608, 52 Am. Rep. 12); *Griggs v. Fleckenstein*, 14 Minn. 81 (Gil. 62) (100 Am. Dec. 199); *Harris v. Mobbs*, L. R. 3

E. D. 268. The acts of a child not yet arrived at an age where it is capable of exercising judgment or discretion come well within the philosophy of the rule by which the foregoing cases are controlled.

It is to be conceded that if the act of a child — no matter how young or irresponsible — be of itself, and wholly independent of the defendant's negligence, the cause of the injury complained of, there can be no recovery of damages. This is but an illustrative application of the general rule that, to charge a person with liability for damages, the negligence alleged must be found to have been the proximate cause of the injury to the plaintiff. But if negligence has been shown, the question whether such negligence or the independent act of the child constitutes such proximate cause, or whether the injury resulted from a combination of the defendant's negligence and the act of the child, is, under ordinary circumstances, a question of fact for the jury, and not of law for the court. *Ward v. R. R.,* 97 Iowa, 52; *Brownfield v. R. R.,* 107 Iowa, 254. The instruction asked by the appellant ignores this principle, and directs the jury, as a matter of law, that if the children had found the panel down, and lifted it back to its position against the fence, before the injury occurred, the plaintiff could not recover. There was therefore no error in refusing the request. It further appears that the court, in the course of its charge, correctly defined the term " proximate cause," and carefully and repeatedly explained to the jury that, to entitle plaintiff to recover, it must first be found not only that the appellants were negligent in building the fence, but that such negligence was the direct and proximate cause of the injury. It should be remembered, however, that " proximate cause " does not always means the cause nearest in point of time. It means " closeness of causal relation, not nearness in time or distance." *R. Co. v. Salmon,* 39 N. J. Law, 299 (23 Am. Rep. 214); *Dickenson v. Boyle,* 17 Pick. 78 (28 Am. Dec. 281); *Brown v. R. R.,* 54 Wis. 343 (11 N. W. 356, 911, 41

Am. Rep. 41).  The primary cause is the proximate cause, though it may act through successive instruments.  *R. Co. v. Kellogg*, 94 U. S. 469 (24 L. Ed. 256).  It is not essential, therefore, for a plaintiff to show that an act claimed to have been the proximate cause of an injury was the only cause. It is sufficient if it be shown that the defendant's act produced or set in motion other agencies, which, in turn, produced or contributed to the final result.  8 Am. & Eng. Enc. Law (2d Ed.) page 572; *Pollett v. Long*, 56 N. Y. 200; *Gould v. Schermer*, 101 Iowa, 582; *Leame v. Bray*, 3 East, 595; *McDonald v. Snelling*, 14 Allen, 292 (92 Am. Dec. 768).  Where two causes both of which are in their nature proximate combine to produce an injury, one of which causes being attributable to the negligence of the defendant, and the other not being chargable to the negligence of either party, the plaintiff may recover.  *Langhammer v. Manchester*, 99 Iowa, 295; *Manderschid v. Dubuque*, 25 Iowa, 109.  Or in the language of Mr. Wharton: " We may consider it established that the fact that the plaintiff's injury is preceded by several independent conditions, each one of which is an essential antecedent of the injury, does not relieve the person by whose negligence one of these antecedents has been produced from liability for such injury."  Wharton's Negligence, section 85.

We think, therefore, that it was not error to leave the question of proximate cause to the jury, and that the instructions given in respect thereto are correct.

VI.  It is complained that, in instructing the jury upon the assessment of damages, the trial court assumed that plaintiff's injuries were permanent; but we think the language

6. INSTRUCTION. employed, when fairly interpreted, does not convey this meaning.  In this connection the court also made use of a sentence beginning as follows: " If you find, by a preponderance of the evidence, * * * a permanent impairment and destruction of the nervous system, and the functions thereof," etc.  It is said in criticism

of this language that there was no claim or proof that plaintiff's nervous system was destroyed. The use of the word "destruction" was perhaps not entirely fortunate, yet we think it not misleading. There is, of course, a sense in which it may fairly be said that the "nervous system" is incapable of destruction except by death of the body; but when the court, in referring to the results of a physical injury, speaks of "permanent impairment and destruction of the nervous system, and of the functions thereof," it obviously means such an enfeeblement or impairment as will mark the condition of the plaintiff through life, or such a loss or impairment of one or more of the functions of the nervous system as destroys their natural efficiency. For instance, the term "loss of a hand" has been applicable to an injury where the use of the hand is destroyed. *Sneck v. Ins. Co.,* 88 Hun, 94 (34 N. Y. Supp. 545); *Lord v. Ins. Co.,* 89 Wis. 19 (61 N. W. Rep. 293, 26 L. R. A. 741; 46 Am. St. Rep. 815). Insurance against the total loss of both feet has been held to cover loss of the use of the feet by paralysis. *Sheanon v. Ins. Co.,* 77 Wis. 618 (46 N. W. Rep. 799, 9 L. R. A. 685, 20 Am. St. Rep. 151). It is in this modified sense the word "destruction" is used by the trial court, and we think the issues and the evidence are broad enough to justify the instruction.

In respect to the other matters argued, we find no reversible error.

For the reasons stated, the judgment of the district court is affirmed.

BISHOP, J. (dissenting).— I do not agree in the conclusion reached in the fourth subdivision of the majority opinion. The request for instruction therein set out was bottomed upon the thought that the question arising out of the facts sought to be proven by defendants was one of proximate cause. Fairly stated, the question was this: Was the second fall of the panel, if such there was, proximately caused by the negligence of the defendants, as charged? By

refusing the request the court, in effect, repudiated the thought of proximate cause as related to the subject-matter in hand, and not only this, but, in the instruction given on its own motion, treated the matter as involving no more than a question of contributory negligence.   Given the facts as contended for, and it is my judgment that the situation presented primarily, at least, a question of proximate cause; and, as such question should have been submitted to the jury, there was error.

I am authorized to say that my view is concurred in by Mr. Justice MCCLAIN.