# Montgomery Street Railway Co. *v.* Hastings.

*Action against Street Railway to recover for Injury to Horse and Buggy.*

1. *Action against street railway; sufficiency of plea of contributory negligence.*—In an action against a street railway company to recover damages for injuries to a horse and buggy occasioned by a collision between a street car and the horse

[Montgomery Street Railway Co. v. Hastings.]

and buggy, alleged to have been caused by the negligence of the defendant's employees, a plea which set up contributory negligence on the part of the person in charge of said horse and buggy, which avers that the said person allowed the buggy in which she was sitting with the horse attached thereto, to remain standing diagonally across the street "with the hind wheels of the buggy within a few feet of the defendant's track so that any backward movement of the horse would put the buggy directly on to defendant's track," is insufficient as a plea of contributory negligence, inasmuch as the facts particularized do not, in themselves, constitute negligence at all.

2. *Same; same.*—In such a case, a plea which avers that the horse attached to the said buggy "was afraid or skittish of street cars," and yet the person in charge of said horse and buggy "allowed the horse to remain upon the street, which was a very narrow one, and that the horse became frightened and backed the buggy on to the track in such close proximity, to-wit, twenty feet to the approaching car that the motorman in charge thereof thereupon used all appliances at hand to stop the car, but was unable to stop the car before it struck the buggy," is insufficient as setting up contributory negligence on the part of the person in charge of the horse and buggy.

3. *Same; same.*—In such a case a plea which avers that the buggy and horse were standing diagonally across the street when the accident occurred, that the rear wheel of the buggy was within a few feet of defendant's track, when the car which passed along said street going west, and the car passed the buggy without any trouble; that in about ten minutes when the car returned and was moving down the same street towards the horse and buggy, he noticed that the person sitting in the buggy and the buggy and horse were in the same position as they were when he was going west; that the motorman having passed the buggy safely continued to move the car down the track and slowed up his car in order to go on the switch on said street; and when the front of the car was within twenty feet of the horse the motorman saw that the horse became frightened and began to back the buggy on to the track; that upon seeing the perilous position of the horse and buggy the motorman applied the brakes and used all the appliances at hand to stop the car, but was unable to do so before the collision occurred, is sufficient as a plea of contributory negligence and subject to demurrer.

4. *Action against street railway company to recover for injuries to a horse: admissibility of evidence.*—In an action against a street railway to recover damages for injuries to plaintiff's

28

[Montgomery Street Railway Co. v. Hastings.]

horse, alleged to have been caused by reason of the defend-
ant's negligence which resulted in a collision, were among the
damages alleged to have been sustained to the horse was that
of rendering the horse wild and unsafe and spoiling its tem-
per, it is competent for the plaintiff to introduce evidence to
show that before and up to the time of the collision the horse
was docile, not afraid of cars, etc., and also that after the col-
lision the horse had an ill disposition, was afraid of cars and
was difficult to handle any where near cars.

5. *Admissibility of evidence: testimony of expert.*—A person who is
shown to have had experience with horses and to have been
engaged in the study of veterinary surgery for a year is a
competent witness to testify to the value of a horse which he
had seen and examined before and after an injury.

6. *Action for injuries to horse; admissibility of evidence as to his
value.*—In an action against a street railway company to re-
cover damages for injuries to a horse, it is competent during
the examination of the plaintiff to ask him, "What was the
horse worth before it was injured?" such question calling
for an opinion as to the market value of the horse.

7. *Examination of witness; impeachment.*—In an action against a
street railway company to recover damages for injuries to a
horse and buggy, resulting from a collision which was alleged
to have been caused by the negligence of the defendant's em-
ployees, where the motorman of the car which collided with
the horse and buggy, during his examination as a witness for
the defendant, testified that he had exercised every possible
care to avoid the collision, it is competent for the plaintiff, dur-
ing the cross examination of such witness, for the purpose of
laying a predicate for his impeachment, to ask him if he did
not, immediately after the accident, tell a certain person who
was present at the time of the accident, that the accident
never would have happened if he had been more careful; such
statement by the witness, if made, being in conflict with his
testimony on the trial and affecting his credibility.

8. *Action for damage to buggy; admissibility of evidence.*—In an ac-
tion against a street railway company to recover damages
for injuries to a buggy resulting from a collision with one
of the defendant's street cars, where there is no question in
the case as to the buggy becoming second handed, through and
by reason of the injuries it received in the collision, it is not
competent to ask the person who repaired the buggy if it is
not true "that when an article becomes seconded handed it
loses much?"

9. *Action against street railway company to recover damages to*

[Montgomery Street Railway Co. v. Hastings.]

*horse and buggy; charge of court to jury.*—In an action against a street railway company to recover damages for injuries to a horse and buggy resulting from a collision with one of the the defendant's cars alleged to have been caused by defendant's negligence, where it is shown by the evidence that while the horse was standing hitched to a buggy on a street on which defendant's car was running and while the buggy was occupied by a person, the horse became startled at the approaching car and began to back and backed the buggy on to defendant's track immediately in front of the car, and the testimony was in conflict as to whether the defendant's motorman made any effort to stop the car, charges are erroneous and properly refused which instruct the jury that the burden was upon the plaintiff to show to the reasonable satisfaction of the jury that the person sitting in the buggy used every effort to prevent said horse from backing on to the track, and if such person failed to do so, they must find for the defendant.

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

This action was brought by the appellee, Edmund M. Hastings, against the appellant, the Montgomery Street Railway Company, to recover damages for injuries to his horse and buggy, alleged to have been caused by reason of a collision between one of the electric cars operated on the defendant's street railway and said horse and buggy of the plaintiff. There were motions to strike the whole complaint, and also motions to strike various parts thereof. Each of these motions is shown by the bill of exceptions, but it is not shown that any exception was taken to the action of the court as to either of said rulings.

The complaint consisted of but one count. It in substance alleged that defendant operated a railroad by means of electricity through the streets of Montgomery, including Mildred street, between Holcombe street and Root street; that a car of defendant in charge of a motorman and conductor was operated on said Mildred street on the 17th of November, 1900; that plaintiff was the owner of a horse and buggy which was on that day temporarily in charge of Mrs. E. A. Shanks, who was sitting in the buggy to which the horse was attached on Mildred street, and that said horse and buggy were

standing still adjacent to the sidewalk; that while plaintiff's horse and buggy were in the position aforesaid, a car of defendant approached said buggy facing said horse; that when the car was about 100 feet from the buggy, the horse became unmanageable, and beyond the control of Mrs. Shanks, and began to back said buggy in the direction of defendant's track; that Mrs. Shanks endeavored to control the movements of said horse, but, despite her efforts, said buggy was backed on said track in front of said approaching car in such a position as to make a collision unless said car should be stopped; and when said car was about 100 feet from said buggy, the person in charge of said car observed, or could have observed, the position of the buggy on said track, the inability of Mrs. Shanks to control said horse and the danger of a collision; that the person in charge of said car negligently continued on his course until he ran said car violently into said buggy; that said horse, buggy and harness were badly damaged, and the temper of the horse spoiled, and thereby reduced its value.

The defendant demurred to the complaint upon many grounds, stating in various forms that the complaint shows that the person in charge of the horse and buggy was guilty of contributory negligence; that the plaintiff shows that the injuries sustained were caused in consequence of an inevitable accident, that it is not shown that the motorman in charge of defendant's car was guilty of negligence at the time of the accident. These demurrers were overruled.

The defendant pleaded the general issue and several special pleas. The 3d and 4th pleas set up that the person in charge of said horse and buggy was guilty of negligence, which contributed proximately to the injury complained of, in that such person, when the horse became startled or frightened at the car, pulled the horse back and caused the buggy to back on the track directly in front of the approaching car. Demurrers to these pleas were overruled.

The 2d, 5th and 6th pleas were as follows: "2. And the defendant for further answer to said complaint, says that the plaintiff ought not to recover in this ac-

tion, because the person in charge of said horse and buggy, just before and at the time of the collision, was guilty of negligence, which contributed proximately to the injury complained of in this: That the person in charge of said horse and buggy allowed the buggy in which she was sitting with the horse attached thereto to remain standing in the street diagonally across Mildred street, with the hind wheel of the buggy within a few feet of defendant's track, so that any backward movement of the horse would put the buggy directly on to the defendant's track."

"5. And the defendant for further answer to said complaint, says that the plaintiff ought not to recover in this action, because the person in charge of said horse and buggy, just before and at the time of the collision, was guilty of negligence, which contributed proximately to the injury complained of in this: That the horse which was in charge of the said Mrs. Shanks, was afraid or skittish of street cars, and yet the said Mrs. Shanks allowed said horse to remain upon the street which was a very narrow street, and that the horse became frightened and backed the buggy on to the said track in such close proximity, to-wit, twenty feet, to the approaching car that the motorman in charge thereof thereupon used all the appliances at hand to stop said car, but was unable to stop the car before it struck the buggy."

"6. And the defendant for further answer to said complaint says that the plaintiff ought not to recover in this action, because the person in charge of said horse and buggy, just before and at the time of the collision, was guilty of negligence which contributed proximately to the injury complained of in this: That the buggy and horse were standing diagonally across Mildred street, with the rear wheel of the buggy within a few feet of the defendant's track, when the car which struck said buggy passed along said street going West; that the motorman operating said car passed said buggy with the car and went on out to the end of the line, and in a few minutes, to-wit, ten minutes, returned with the same car, and when the car was moving down Mildred street in an easterly direction the motorman saw the person in charge of the horse and buggy sitting in the buggy

with the buggy and horse in the same position they were in when the car passed by a few minutes before going west. The motorman having passed the buggy safely, continued to move the car down the track, that within a few feet of where the horse was standing, there is a switch or turnout on defendant's track and that the motorman slowed up his car to go on to the south switch, coming eastward; that when the front of the car got within to-wit, twenty feet, of the horse's head, the motorman standing on the front platform of the car first saw that the horse became startled or frightened, and that it threw up its head and began to back the buggy on to the track, that after the motorman discovered the perilous position of said horse and buggy, he applied the brakes and used all appliances at hand to stop the car, and did exerything in his power to stop the same, but was unable to do so before the collision occurred."

To the 2d plea the plaintiff demurred upon the following grounds: "1. It is not alleged in said plea how the facts stated contributed to said injury. 2. It is not denied in said plea that defendant's employe saw that said horse had become unmanageable and had begun to back upon defendant's track in such a position as would cause a collision and that defendant's agent negligently brought said car into collision with said horse and buggy. 3. It is not denied in said plea that the person in charge of said horse used every effort to keep the said horse from defendant's track and that defendant's agent in charge of said car saw that said horse had become unmanageable and was on said track and that defendant's agent negligently brought said car into collision with said horse and buggy. 4. It is not denied in said plea that after the defendant's agent say the perilous condition of said horse and buggy, he did not check or stop said car, but negligently brought said car into collision with said horse and buggy."

To the 5th plea the plaintiff demurred upon the same grounds of the demurrer interposed to the 2d plea, and upon the following grounds: 1. It is not alleged that said motorman made any effort to stop said car after

said buggy was backed upon said track. 2. The allegation that said motorman "was unable to stop the car before it struck the buggy" is a mere legal conclusion without the statement of what said motorman did. 3. It is not alleged that Mrs. Shanks knew said horse "was afraid or skittish of street cars."

To the 6th plea the plaintiff demurred upon the following grounds: "1. The allegation that the motorman 'used all appliances at hand to stop said car, and did everything in his power to stop the same, but was unable to do so before the collision occurred' are but legal conclusions of the pleader. 2. It is not alleged what the motorman did to avoid the collision. 3. The said plea does not show that by the exercise of due diligence the motorman could not have avoided said collision. 4. It is not shown that the defendant, after said motorman discovered the perilous position of said horse, used due diligence to avoid said collision. 5. It is not alleged within what distance a car could have been stopped and yet it is alleged that said motorman could have seen said horse on the track twenty feet from the point of the collision. 6. It is not shown how far the horse was on the track from the car at the time the motorman saw the perilous position of the horse, and it is not alleged what said motorman afterwards did to avoid said collision."

These demurrers were sustained.

The evidence for the plaintiff tended to show the following facts: The plaintiff's horse, buggy and harness had been injured, and the temper of the horse changed from a gentle to a wild horse. The horse was worth in the fall of 1900 just before the accident, $125. The horse was unsafe in the Spring after the accident. The horse was hurt in the side and was kept in a veterinary stable for some weeks. When the horse came to the veterinary surgeon after the accident, she was not worth exceeding $40; her temper was changed for the worse. She was cured so fa~ ~as concerned, but not as to the disposition; scars were left from the injury. At the time when plaintiff bought the mare in the spring of 1900, she was sound and gentle. Gentleness in a horse adds greatly to its value. Plain-

tiff's mother could drive the mare before the accident. She was as good as far as travelling was concerned after as before the accident, but her market value was then but about $60. She was gentle before the accident and safe for a lady to drive. Her injuries consisted of a hurt on the back, hind foot, and cut in the side; she had a scar after she got well, and was wild and afraid of street cars and worth from $35 to $40. The buggy before the accident was worth $75. After the accident it was worth nothing until repaired and it cost $10.90 to repair. The harness was worth $10 before, and $5 after the accident. Mrs. Shanks was sitting in the buggy a little east of the front of Miss Wilson's on the south side of Mildred street; the horse and buggy stopped along side of and parallel to the sidewalk, with the horse's head to the west. Mrs. Hastings left Mrs. Shanks sitting in the buggy and she was there with the reins in her lap when the defendant's car came from the west approaching the horse and buggy. It was about 100 feet from where the buggy was to the west opening of the switch. The car was running fast and turned into the branch of the switch next to where Mrs. Shanks was. As the car turned into the switch, the horse began to show fright and to back. The car was then more than 100 feet away. Mrs. Shanks cried out to the motorman. Mrs. Hastings waved at the motorman and called to him to stop. The motorman made no movement to stop the car. The buggy was backed on the track while the car was 100 feet away. The car struck the buggy and stopped. M· ·· Shanks called to the motorman twice; the first time when the car was 100 feet away. There was nothing to prevent the motorman from seeing the peril. Mrs. Shanks had driven the horse before that time all about where cars were. Mrs. Shanks had her hands on the lines, which were lying loose in her lap; she did not slap the horse, nor do anything except to speak to the horse. The horse was backing several minutes before the collision. The motorman was standing on the front end of the car, looking straight forward, face towards the east. He

did not apply the brake, turn the electrical lever, or do anything else to stop the car. The car was coming very fast.

The testimony for the defendant tended to show that a few minutes before the accident complained of the car of the defendant which collided with the buggy, passed the horse and buggy on Mildred street while going on its trip west; that at that time the horse and buggy were standing in front of Miss Wilson's house; that ten or fifteen minutes afterwards, the car returned and the horse and buggy were at the same place on Mildred street, and were standing a little across said street only a few feet from the track of the defendant; that as the car approached the horse and buggy, the horse pricked up her ears as if startled or frightened, when the car was ten or fifteen feet from the horse; that the car had just entered the switch and was going at the rate of about four miles an hour, and the brake was partially on; that as soon as the horse pricked up her ears and became frightened, Mrs. Shanks, who was sitting in the buggy with the reins on her lap and not in her hands, grabbed up the reins and commenced to pull the horse backwards, and the horse backed in front of the car, and that before the motorman was able to stop the car, the car had collided with the buggy; that as soon as the motorman saw the horse backing, he put on the brake as rapidly as possible and did his best to stop the car.

Upon the examination of the motorman, he testified that Mrs. Shanks did not call to him to stop the car, nor did he see any one else waving at him; that he was looking ahead all the time, and that the car was stopped as quickly as possible after he saw the horse begin to back.

During the examination of W. J. Kerlin, a witness for the plaintiff, he testified that he was 45 years old and had been in the livery stable business most of his life, buying and selling horses; that his experience enabled him to judge of the value of a horse; that he knew the horse owned by the plaintiff which was injured. Thereupon the plaintiff asked him the following question: "I will ask you what the value of the horse was

in the fall of 1900 before this accident?" The defendant objected to the question upon the ground that it was incompetent and because it did not show the value of the horse at the time of the accident. The court overruled the defendant's objection and the defendant duly excepted. The witness then answered: "She was worth $125."

The plaintiff then asked the witness the following question: "Did you see this horse in the spring of 1901, after the accident?" And upon the witness stating that he did, he was asked the question: "What was her condition then as to gentleness?" The defendant objected to this question upon the ground that it was not shown when or at what time in the spring of 1901 the witness saw the horse, and because the testimony called for by the question was incompetent, immaterial, and because her condition in the spring of 1901 could in no way show how she was damaged by the defendant in November, 1900, when she was hurt. The court overruled the objection and the defendant excepted.

Upon the introduction of Humphrey Bolling, a witness for the plaintiff, he testified that he was studying to become a veterinary surgeon under Dr. Jolly who was a practicing veterinary surgeon; that at the time he was testifying he had been with Dr. Jolly about a year; that he knew the plaintiff's horse and saw her when she was brought to Dr. Jolly's stable after having been injured; that she was hurt by having a shaft run in her side. The plaintiff then asked the witness the following question: "Did the fact that that cut that you are speaking of being in the horse's side injure its market value in any way?" The defendant objected to this question, upon the ground that it was not shown that the witness was an expert. The court overruled the objection and the defendant duly excepted. The witness answered that it did, and then testified that in the condition the horse was in which she was brought to Dr. Jolly's stable, she was worth only about forty dollars.

Upon the plaintiff being introduced as a witness in his own behalf, he was asked the following question:

[Montgomery Street Railway Co. v. Hastings.]

"What was the horse worth before she was injured?" The defendant objected to this question upon the ground that it was incompetent and that it was not a proper test as to the value of the horse. The court overruled the objection, and the defendant excepted. The witness answered that the horse was worth about $175.

The plaintiff's counsel then asked the plaintiff, being examined as a witness, the following question: "What was the market value of the horse immediately after the accident?" The defendant objected to the question upon the ground that it was incompetent, and because it was not a proper test as to the damage done to the horse to show its market value immediately after it received the injuries. The court overruled the objection, and the defendant duly excepted. The witness answered that the horse was worth immediately after the accident about thirty-five or forty dollars.

Upon the cross examination of the plaintiff as a witness he was asked the following question: "What did it cost you to have the buggy repaired?" The court sustained the plaintiff's objection to this question, and to this ruling the defendant duly excepted. Thereupon, on the further cross examination of the plaintiff as a witness, the defendant asked him if he did not take the buggy to a mechanic to be repaired, and if it was not repaired at the expense of ten dollars and ninety cents. The court sustained the plaintiff's objection to this question, and to this ruling the defendant duly excepted.

Upon the examination of Mr. Geible, who was the manager of the carriage works where the buggy was repaired, he testified as to what the plaintiff paid him for the repairs.

Upon the cross examination of M. A. Thomas, who was the motorman in charge of the car at the time of the accident, the plaintiff asked him the following question: "Didn't you state to Mrs. Hastings immediately after the accident that it would not have happened if you had been more careful?" The defendant objected to this question, the court overruled the objection, and the defendant duly excepted. The witness answered that he did not.

During the cross examination of J. D. Geible who was a witness introduced by the defendant and after he had testified to having made the repairs on the buggy of plaintiff which was injured in the collision, he was asked the following question: "Is it not true that whenever an article becomes second hand it loses by it?" The defendant objected to this question, because it was immaterial, illegal and irrelevant.

In rebuttal, the plaintiff examined Mrs. Hastings who testified that the motorman who was in charge of the car at the time of the collision stated to her immediately after the accident, "that if he had been looking that way it would not have happened; that he was very sorry for it."

The defendant requested the court to give to the jury the following written charges and separately excepted to the court's refusal to give each of them as asked: (1.) "The court charges the jury that if they believe the evidence, they will find for the defendant." (2.) "The jury must not find for the plaintiff, unless they are reasonably satisfied from the evidence that Mrs. Shanks used every effort to prevent the horse from backing on to the track." (3.) "The court charges the jury that the burden is on the plaintiff to show to the reasonable satisfaction of the jury that Mrs. Shanks used every effort to prevent said horse from backing onto the track, and if he has failed to do so, they must find for the defendant." (4.) "The court charges the jury that if they believe from the evidence that the motorman used all the appliances at hand to stop the car after he discovered the perilous position of the buggy, then they must find for the defendant." (5.) "The court charges the jury that if the horse in question did not become frightened at the car approaching, then your verdict should be for the defendant."

There were verdict and judgment for the plaintiff, assessing his damages at $75. The defendants appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

C. H. ROQUEMORE and LOMAX, CRUM & WEIL, for appellant.

WATTS, TROY & CAFFEY and P. A. MASSIE, *contra.*— There were motions to strike the whole complaint, and also motions to strike the various parts thereof. Each of these motions is shown by the bill of exceptions, but it is not shown that any exception was taken to the action of the court as to either of said rulings.—*Holly v. Coffee,* 123 Ala. 406; *Cottingham v. Greely-Barnham Grocery Co.,* 123 Ala. 479; *Cen. of Ga. R. Co. v. Joseph,* 125 Ala. 313.

The court properly sustained the demurrers to the 2d, 5th and 6th pleas. Said demurrers did not aver facts showing contributory negligence on the part of the person in charge of the horse and buggy.—*L. & N. R. R. Co. v. Sullivan,* 59 Ala. 272; *Gothard v. A. G. S. R. R. Co.,* 67 Ala. 114; *Cook v. Cen. of Ga. R. Co.,* 67 Ala. 533.

The charges requested by the defendant were properly refused.—Authorities *supra.*

There was no error in the court's ruling upon the evidence.—*A. G. S. R. R. Co. v. Moody,* 92 Ala. 279; *E. T., V. & G. R. R. Co. v. Watson,* 90 Ala. 41; and authorities cited *supra.*

McCLELLAN, C. J.—No exception appears to have been reserved to ruling on defendant's motion to strike certain averments of the complaint.

The assignment of error based upon the overruling of the demurrers to the complaint is not supported by argument or citation of authorities in the brief, and, the complaint stating a cause of action, that ruling of the trial court need not be reviewed. We will say, however, that we are not impressed that any of the grounds of the demurrers were well taken.

The 2d plea avers that the person in charge of the horse and buggy was guilty of negligence which proximately contributed to the injury to them complained of, and then particularizes facts as constituting this alleged contributory negligence which in themselves do not constitute negligence at all. It can by no means be affirmed that to stop a buggy in a street off the track of a street railway with "the hind wheel thereof within a

few feet of the track," the driver being in the buggy, is negligence on the driver's part. This is the *fact* averred as the basis for the conclusion averred of contributory negligence. It does not support the conclusion. The plea in effect avers that this conduct on the part of the person in charge of the horse and buggy was negligence *per se*, as matter of law. It was not, and the plea was properly held bad on demurrer.

Similarly the 5th plea avers facts as contributory negligence on the part of the person in the buggy which do not import negligence. It cannot be said, as matter of law, to be negligence, contributing to an injury suffered in a collision with a street car, to drive a horse which is "afraid or skittish of the street car" on a narrow street in which there is a railway track. The further averment in this plea as to the motorman's efforts to stop the car after the vehicle was actually on the track, were provable under the general issue.

Plea 6 also fails to aver contributory negligence on the part of the driver; and all it does aver material to the case was within the general issue presented by the plea of not guilty.

The injury complained of was sustained in November, 1900. There was evidence tending to show that before and up to the time of the collision the horse was docile, not afraid of cars, etc., and also that after the collision it was of an ill disposition, very afraid of cars, difficult to drive near cars, given to backing and attempting to kick and run when approaching cars and when cars were approaching him, etc., etc. No cause for this change in the animal other than the collision in question was suggested in the evidence. The jury had a right to find that the change was due to the collision. To afford them a basis for the assessment of damages referable to this impairment of the animal's usefulness, it was entirely competent to show what the value was recently before and soon after the collision; the estimates taking its change of disposition into account. The condition of gentleness before, and the condition of wildness and viciousness afterwards were each and both in the nature of continuing conditions. Evidence of

the former condition a month or two before the collision and the value of the animal at the time was competent, especially in connection with evidence given by other witnesses that such condition continued up to the time of the collision; and so, too, evidence that it was wild two or three months after the collision and of the depreciation of its value at that time in consequence, was properly received, especially in view of other evidence, that this latter condition had existed ever since the collision. Indeed, the abstract facts that the condition of wildness and viciousness continued for several months and still obtained the following spring, was of itself, pertinent to the inquiry of deterioration in its value, and witnesses were properly allowed to give their estimates of its value at that time, taking its then disposition into account, and also the fact of its continuation from the injury to that time.

The objection to the witness Bolling testifying that the fact of a cut, which had been described being in the horse's side, injured its market value, proceeding on the ground that the witness was not an expert, was not well taken.—*Ward v. Reynolds*, 32 Ala. 384; *A. G. S. R. R. Co. v. Moody*, 92 Ala. 279.

The objection to the question, "What was the horse worth before it was injured?" propounded to the plaintiff, was hypercritical. To all ordinary apprehension, this called for an opinion as to the market value.

The defendant was allowed to prove the cost of repairs to the buggy, and there was no dispute as to the amount of it. If the court erred in not allowing this proof to be made by the witness Hastings, the error could not have prejudiced the defendant.

The witness Thomas, the motorman, having testified by way of stating it as a conclusion and otherwise that he had exercised every possible care to avoid the collision, it was competent for the purpose of laying a predicate for his impeachment to ask him if he had not told Mrs. Hastings, immediately after the collision, that it would not have happened if he had been more careful. This statement, if made, was in conflict with his testimony on the trial, and proof of it went to his credibility.

[Moore v. Holdoway & Co.]

There was no question in the case as to the buggy becoming "second handed" through and by reason of the injuries it received in the collision. It was not a new buggy at the time of the collision. The plaintiff had owned and used it for several months, and it was a second-hand buggy when he bought it, i. e., it had already been used for sometime. The collision, therefore, had nothing to do with making it second-handed and its consequent depreciation in value. It was entirely impertinent, therefore, to ask the witness Geible the question: ' "Is it not true that when an article becomes second-handed it loses much?" and his answer: "It certainly does," was not relevant to any issue in the case. Having in view the connection in which the question was asked, and it may be that it was intended to elicit evidence upon the inquiry whether an article which has been broken and repaired, is not less valuable than it was originally, but this is mere speculation as to what may have been intended by the question. On its face it imports no reference to a repaired article, and it seems clear that the witness understood it to have reference to the relative market value of such an article as a buggy when new and unused, on the one hand, and after it had been used and become second-handed on the other. The testimony was inadmissible, and we are unable to affirm that its admission did not prejudice the defendant.

We find no error in the rulings of the court on defendant's requests for instructions.

Reversed and remanded.