(75 South. 941)

DENT v. STOVALL et al. (4 Div. 680.)

(Supreme Court of Alabama. April 19, 1917. On Rehearing, May 31, 1917.)

**1. FORCIBLE ENTRY AND DETAINER ☞6(2) — EVIDENCE—ADMISSIBILITY.**

Under Code 1907, § 4271, providing that in an action of forcible entry and detainer the estate or merits of the title cannot be inquired into, all questions as to the ultimate title or right of possession as distinguished from the actual possession are excluded.

[Ed. Note.—For other cases, see Forcible Entry and Detainer, Cent. Dig. § 31.]

2. EVIDENCE ⬿121(6)—DECLARATIONS—POSSESSION OF LAND—ADMISSIBILITY.

In trials of the title to realty, a party may prove the claim or disclaimer of a party in possession to show the intent with which possession is held; such declarations being admissible as of the res gestæ and explanatory of the actual possession otherwise proved.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§. 316, 1117, 1119.]

3. EVIDENCE ⬿273(2)—DECLARATIONS AS TO TITLE—ADMISSIBILITY.

Declarations as to the source of title are not admitted in any form of action.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1111, 1112.]

4. FORCIBLE ENTRY AND DETAINER ⬿29(3)—EVIDENCE—ADMISSIBILITY.

In forcible entry and detainer a deed purporting to convey the land in question to defendant's ancestors is admissible for the limited purpose of showing the extent of the possession claimed.

5. FORCIBLE ENTRY AND DETAINER ⬿29(2)—EVIDENCE—ADMISSIBILITY.

In forcible entry and detainer, where a deed was admitted for the limited purpose of showing the extent of possession, testimony that the grantor had been working the land was irrelevant as drawing the attention of the jury to the question of title rather than possession.

[Ed. Note.—For other cases, see Forcible Entry and Detainer, Cent. Dig. §§ 135–139, 147.]

6. FORCIBLE ENTRY AND DETAINER ⬿34 —EVIDENCE—SUFFICIENCY.

Evidence *held* to warrant general affirmative charge for defendants in forcible entry and detainer suit.

[Ed. Note.—For other cases, see Forcible Entry and Detainer, Cent. Dig. § 157.]

7. FORCIBLE ENTRY AND DETAINER ⬿29(2)—EVIDENCE—ADMISSIBILITY.

In forcible entry and detainer, where defendants put in evidence the possession of one under whom they claimed, it was proper for plaintiffs to show that such person took possession under a lease from them.

[Ed. Note.—For other cases, see Forcible Entry and Detainer, Cent. Dig. §§ 135–139, 147.]

On Rehearing.

8. EVIDENCE ⬿273(3)—DECLARATIONS AS TO TITLE—ADMISSIBILITY.

In an action of forcible entry and detainer, declarations of an alleged tenant in possession claiming to own the property were inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1113, 1114.]

McCLELLAN, J., dissenting.

Appeal from Circuit Court, Barbour County; J. S. Williams, Judge.

Action by Henry A. Dent against Jessie Stovall and others. From the judgment rendered, plaintiff appeals. Reversed and remanded. On rehearing. Application overruled.

McDowell & McDowell, of Eufaula, for appellant. A. H. Merrill & Sons, of Eufaula, for appellees.

SAYRE, J. [1] This is an action of forcible entry and detainer brought by appellant against appellees. The statute (section 4271 of the Code) provides that "the estate or mer-

its of the title cannot be inquired into." It has often been pointed out that the purpose of the action is to protect the actual possession of real estate against unlawful and forcible invasion. Hence the rule that:

"The possession at the time of intrusion is the only matter which is permitted to be the subject of investigation. All questions as to the ultimate title or as to the right of possession, as distinguished from the actual possession, are excluded from the jury." Horsefield v. Adams, 10 Ala. 9; Knowles v. Ogletree, 96 Ala. 555, 12 South. 397.

[2, 3] In trials of the title to realty it is often proper, as the cases cited by appellees show, to prove the claim or disclaimer of a party in possession in order to show the intent, where that is material, with which possession is held; this because possession under a claim of title is some evidence of title. Such declarations are admissible in any case, not to prove possession, but as of the res gestæ and explanatory of an actual possession otherwise proved. Declarations as to the source of title are not admitted in any form of action. It follows from these considerations, and from the rule for the exclusion of hearsay, that declarations of the party in possession, or claiming possession, have no legitimate office to perform in the action of forcible entry and detainer. It appears at many places in the record that this rule was not observed in the circuit court. Nor does any reason appear why these errors should not result in a reversal. In a number of instances, to say the least, apt objections were interposed and they should have been sustained.

[4, 5] Defendants were permitted to put in evidence, "simply to show color of title," a deed which had been executed by W. S. White, state auditor, and purporting to convey to their ancestor the land the possession of which was in dispute. The admissibility of this evidence for the limited purpose of showing the extent of the possession claimed by defendants is sustained by the decision in Farley v. Bay Shell Road Co., 125 Ala. 184, 27 South. 770. However, the question to the witness Florence as to whether White knew anything about this land, and his answer that he worked the "White place," were irrelevant and probably harmful as tending, in connection with White's deed, to draw the attention of the jury to the question of title. Plaintiff and his predecessor in title had owned the "White place" for many years, and his contention was that for many years his tenants ′had been in possession of the land in dispute, the "lost eighty," as the witness called it, as a part of the "White place," and defendants here suggest that this evidence was properly received in rebuttal on′ this point. But it was not made to appear that White's occupancy had any connection with the possession claimed by either plaintiff or defendants, or that he was working the place when he made the deed, nor, even

so, can it be supposed that his private interests had any effect upon his official acts as auditor of the state. His deed purported to be a deed of land that had been purchased by the state at tax sale, and he was disposing of it for account of the state presumably, not as he willed, but as the statute directed. Neither his official action in this regard nor the bare fact that at one time he worked the "White place" indicated anything as to the actual possession of the subject of controversy at the time made important by the issue between the parties.

[6] It appeared in evidence without objection or contradiction that the respective parties owned large adjacent tracts of land on either side of the land in controversy, the "lost eighty," and that for many years the parties and their predecessors in interest had been in undisputed possession of their respective tracts. Plaintiff's tract was known as the "White place." Incidentally, almost unavoidably perhaps, it cropped out that the parties on either side claimed to own the "lost eighty." It was matter of dispute, within the proper issues presented by the pleading, whether plaintiff or defendants had been in possession of the "lost eighty" at and before the time of defendants' alleged intrusion thereon. Plaintiff insisted, and adduced evidence tending to show, that he and his predecessors in title had long been in possession of the "lost eighty" as part and parcel of the "White place," and that some time before defendants' alleged intrusion he had put one Long as his tenant in actual possession of the "lost eighty" as part and parcel of the "White place." Defendants, on the other hand, insisted, and brought evidence to sustain their insistence, that Long had been in possession of only a part of the "lost eighty," but that of that part he held possession under them as their tenant. After a while Long, leaving the country, abandoned his possession, whatever it was, and this, we take it, if he had received possession from plaintiff in manner and form as testified by the latter, restored plaintiff's actual possession of the "lost eighty" as a part of the "White place"; his actual possession of the rest of it not being disputed. Otherwise plaintiff had no possession of the 80 in question upon which defendants could intrude. This state of conflict in the evidence is enough to rebut the idea that defendants were entitled to the general affirmative charge, and so to dispose of the contention that errors against plaintiff were of no consequence.

[7] Defendants brought evidence tending to show possession by themselves and C. H. Bishop, under whom they claimed. It was, of course, competent for plaintiff, on the other hand, to show that C. H. Bishop, prior to his death in 1908, held the place under a lease from him, and that afterwards his widow, Mrs. Bishop, mother and mother-in-law of the other defendants, held the land in the same way, and, as a part of this scheme of evidence, to explain the fact that a house had been built on the premises during the time C. H. Bishop was in possession by showing that his (plaintiff's) permission to build had been sought, and that on account of the building Bishop had received a credit on rent alleged to have been reserved by plaintiff. This evidence, along with all the rest tending to show by whom and by what tenure possession had been held prior to the alleged intrusion, seems, in the peculiar circumstances of this case, proper as going to show in whom the possession was at the time when defendants are alleged to have gone on the premises after Long moved out.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.

## On Rehearing.

SAYRE, J. On rehearing our attention is called to the decision in Turnley v. Hanna, 82 Ala. 139, 2 South. 483, as an authority against the proposition of the first paragraph of the foregoing opinion. That decision stands alone. In Humes v. O'Bryan, 74 Ala. 71, there cited, the action was on account for goods sold and delivered, and the decision went simply to the proposition that hearsay declarations may be admitted when it is shown that they were against the interest of the declarant when made, that he had competent knowledge of the facts stated, and that he is since deceased. Section 109 of Greenleaf on Evidence was also cited. This citation was to some earlier edition, but we suppose the section cited appeared then as it did in the later fifteenth edition, which read as follows:

"In regard to the declarations of persons in possession of land, explanatory of the character of their possession, there has been some difference of opinion; but it is now well settled that declarations in disparagement of the title of the declarant are admissible as original evidence."

And, of course, there has been no denial of this proposition. The section concludes as follows:

"But no reason is perceived why every declaration accompanying the act of possession, whether in disparagement of the claimant's title, or otherwise qualifying his possession, if made in good faith, should not be received as part of the res gestæ, leaving its effect to be governed by other rules of evidence."

But in the sixteenth edition, edited by Prof. Wigmore, the passage last above quoted is omitted with the statement that:

"The author here seems to be referring to a totally different principle, or perhaps to two, as explained in the ensuing text above."

The ensuing text above is as follows:

"But the declarations thus usable must be distinguished from certain other kinds of statements, admissible on very different principles, yet having a superficial analogy in that they are declarations about land: (1) If the issue involves prescriptive title and adverse possession, declarations by the possessor may be received.

under the verbal doctrine [verbal act doctrine] as coloring his possession; but here it is not necessary that the declarant be dead."

And more that we need not quote. Greenl. Ev. (16th Ed.) § 152 c. (109).

In Chamberlayne on the Modern Law of Evidence, § 2606, the author, referring to the doctrine which admits declarations as of the res gestæ of possession, says:

"It will be borne in mind * * * that the more obvious ground of relevancy is the circumstance that the mental state under which the possession is being held is itself a relevant fact, and that the extrajudicial statement seems to be an appropriate way of proving it."

This supports the argument of our original opinion in this case.

In line also with the argument of our original opinion that declarations—and we meant self-serving declarations—are only admissible as explanatory of a possession otherwise shown, this court, all the justices concurring, said in McBride v. Lowe, 175 Ala. 408, 57 South. 832:

"While it is true that statements explanatory of a possession proven are admissible, yet that is a different thing from proving the possession itself by a statement. The fact that McBride said he was in possession would not prove that he was in fact in open, notorious, adverse possession."

[8] In addition to repeated statements by Bishop as to the source of the title claimed by him, which were mere narrations of past transactions, and therefore inadmissible (Ray v. Jackson, 90 Ala. 513, 7 South. 747), the court allowed witnesses to testify repeatedly that Bishop, while in possession, claimed to own the property in controversy. Actual possession was the thing in issue. These last-mentioned declarations did not tend to prove possession, but title only. Upon reconsideration we are still of the opinion that the logic of the statute, providing that "the estate or merits of the title cannot be inquired into," presents an insuperable obstacle to a holding that there was no error in the admission of these last-mentioned declarations. The reporter's statement of the case in Turnley v. Hanna is unsatisfactory, and it may be that the ruling in that case, apparently on the question here presented, was controlled by some consideration that is not now clear. But however that may be, we adhere to our former opinion on this point.

Application overruled.

MAYFIELD and THOMAS, JJ., concur in the opinion. ANDERSON, C. J., and SOMERVILLE, and GARDNER, JJ., concur in the reversal, but hold that the authority of Turnley v. Hanna should not be disturbed.

McCLELLAN, J. (dissenting). After a careful reconsideration of this record, my opinion is that the evidence wholly failed to show that the plaintiff had such actual possession of any definite part of the "lost eighty," or that any one had such posses-

sion for him, as that the defendants or any of them could be held to have intruded thereupon, within the purview of our statutes defining forcible entry and unlawful detainer. Code, § 4262; Knowles v. Ogletree, 96 Ala. 555, 12 South. 397. The pertinent doctrine of Chastang v. Chastang, 141 Ala. 451, 37 South. 799, 109 Am. St. Rep. 45, set forth in the second headnote, though there stated as applicable to an action of ejectment, is applicable to this character of action where the plaintiff's right to recover essentially depends upon an actual possession upon which the defendants have intruded. In this view the error of the court in permitting the defendants to adduce declarations of C. H. Bishop asserting the source of his claim to the "lost eighty" was innocuous. Bienville Water Co. v. Mobile, 125 Ala. 178, 184, 27 South. 781; Adams v. Corona Coal Co., 183 Ala. 127, 131, 62 South. 536. The other declarations were clearly within the doctrine of Turnley v. Hanna, 82 Ala. 139, 2 South. 483, a decision that in this connection is, in my opinion, entirely sound.

For these reasons, I would grant the application for rehearing.