(78 South. 53)

EMPIRE GUANO CO. v. JEFFERSON FER-
TILIZER CO.   (6 Div. 581.)

(Supreme Court of Alabama.   Nov. 29, 1917.
Rehearing Denied Feb. 16, 1918.)

1. EVIDENCE ⊂⇒317(4)—HEARSAY—DECLARA-
TIONS OF THIRD PERSON.

In a suit to enjoin alleged unfair competition, evidence that one of defendant's customers pointed out defendant's brand of fertilizer as that of plaintiff and said he was supplying it to the trade that wanted plaintiff's goods was hearsay, and not admissible against defendant over its objection.

2. TRADE-MARKS AND TRADE-NAMES ⊂⇒70(1)
—UNFAIR COMPETITION—SIMILARITY.

Though, as respects unfair competition, the test of similarity is not visual comparison but memory comparison, because the buyer has no opportunity for visual comparison, the court has no memory to be consulted, and must decide the question of similarity by the impression produced upon the eye by the disputed names, brands, or marks.

3. TRADE-MARKS AND TRADE-NAMES ⊂⇒70(4)
— THINGS SUBJECT TO APPROPRIATION —
CAPACITY OF CONTAINERS.

A manufacturer of fertilizers could have no monopoly with respect to the capacity of the bags in which its fertilizer was packed.

4. TRADE-MARKS AND TRADE-NAMES ⊂⇒70(2)
—UNFAIR COMPETITION—SIMILARITY.

Defendant held not guilty of unfair competition in selling fertilizer under name including the word "Empire," which was part of plaintiff's name and of the name of its fertilizer, the similarity not being calculated to deceive a purchaser intending to purchase fertilizer manufactured by plaintiff and buying with the care such a purchaser would usually exercise in such a transaction.

Appeal from Circuit Court, Jefferson County; A. H. Benners, Judge.

Suit by the Empire Guano Company against the Jefferson Fertilizer Company. From a judgment for defendant, complainant appeals.   Affirmed.

Allen, Fisk & Townsend, of Birmingham, for appellant.   Cabaniss & Bowie, of Birmingham, for appellee.

SAYRE, J.  [1] By its bill in this cause appellant sought to enjoin appellee from labeling and selling or offering to sell to the trade a certain brand of fertilizer whereon, to follow closely the language of the bill, the word "Empire" was prominently displayed in such way as to imitate the brands of fertilizer offered for sale by appellant, or in such way as to suggest that fertilizers labeled and offered for sale by appellee were la-
beled and offered for sale by appellant.   It appeared in the proof that appellant, a manufacturer of fertilizers in the state of Tennessee, had for some years been selling to the trade, to retailers in this state, a brand of fertilizers known as the "Empire" brand, when appellee in December, 1906, began to manufacture and place upon the market the "Warrior" and the "Jefferson" brands.   These terms were used by the respective parties in combination with numerous other descriptive words and phrases which were intended to designate the different composition of the fertilizers sold or the special uses to which they were best adapted.   One of appellant's combinations was "Empire Favorite Manure," and appellant complained that appellee imitated this brand.  For the season of 1905–06 appellant's sales in this state amounted to something over 800 tons, of which one-fourth, approximately, went to the John Sutterer Fertilizer Company of Cullman.   In January, 1907, appellee's traveling agent, Robinson, who was at the time its secretary and treasurer also, went to Cullman and there entered into a contract with the John Sutterer Fertilizer Company for the sale of 250 to 350 tons of the "Warrior" and "Jefferson" brands, of which, as we understand the testimony of appellee's witness Whitfield, there were delivered prior to the preliminary injunction in this cause 55 tons branded "Empire of the South Cotton Guano" and 60 tons branded "Warrior" or "Jefferson."   Just before making the contract with the Sutterer Company, Robinson had sold 100 tons of the "Jefferson" brand to Steifelmeyer and 200 tons of the "Warrior" to Karter, both dealers at Cullman.   This agent's testimony is to the effect that after he had made the trade with Sutterer for the Sutterer Company, Sutterer wanted to know whether appellee company could put up a formula under the brand "Empire of the South Cotton Guano," and indicated his desire for a brand different from those sold by his competitors in the local retail trade; whereupon appellee caused an investigation to be made of brands registered with the commissioner of agriculture at Montgomery, and, while finding appellant's several brands there registered along with some others containing the word "Empire," concluded that no infringement upon any right of appellant would be involved, adopted the brand "Empire of the South Cotton Guano" along with its others, and, as before said, 55 tons of the goods sold to the Sutterer Company were shipped to it under that brand.   An attack is made upon the credibility of this testimony by appellant's witness Sanford, who testified that on a subsequent occasion appellee's witness Robinson gave a different version of the circumstances of the contract with the Sutterer Company; but this is denied by Robinson: Sutterer is not examined; and, in the absence of any other testimony

---

as to what occurred between Robinson and Sutterer on the occasion of appellant's sale to the Sutterer Company, we are disposed to accept Robinson's version of the transaction. Still, we think, that while the suggestion of the brand in controversy came from Sutterer, and, as Robinson further testifies, the sale to the Sutterer Company did not depend upon any change in appellant's brands, yet, the suggestion having been made, appellee fell in with it and adopted it with a knowledge of the fact that it would probably carry a vague sort of appeal to some consumers who had theretofore been accustomed to use appellant's brand of fertilizers, believing, however, that it had a lawful right to do so. Finally, so far as concerns appellee's dealing with the brand in controversy and the ultimate results of that dealing, it is noted that there is no indication that appellee ever sold fertilizers under the brand to which appellant objects to any dealer or distributor other than the Sutterer Company, nor is there any competent direct evidence that the Sutterer Company ever sold any fertilizer of appellee's manufacture to any customer who had ever used or who was looking for fertilizer manufactured by appellant. Appellant's witness Carr has testified that in the spring of 1907 he had a conversation with a salesman of the Sutterer Company in its place of business in which the salesman pointed out appellee's brand of "Empire of the South Cotton Guano" there in the company's warehouse as appellant's "Empire" brand, and which, the salesman said, he was supplying to the trade that wanted the "Empire" goods. This evidence was hearsay, and cannot be considered over appellee's objection duly taken. No other testimony having been taken on this point, the inference that any of appellee's "Empire of the South Cotton Guano" was ever sold to any customer of the Sutterer Company is left to rest entirely upon the fact that the Sutterer Company bought that brand of fertilizer for the purpose of resale. That foundation may be accepted as sufficient for that inference, but it still remains to be determined whether any customer was deceived, and, in the state of the evidence before us, the probability as to that depends upon the inquiry whether the brand used by appellee was fairly capable of deceiving any customer of the average intelligence of persons who use fertilizers and may have sought the particular brand manufactured by appellant.

[2-4] Appellant originally filed its bill in this cause upon the theory that it was entitled to protection against an infringement of its alleged exclusive right to the use upon its fertilizers of the term "Empire" as a trademark. But the evidence disclosed the fact that this claim could not be maintained, and the bill was amended so that in its present shape it proceeds upon the ground of unfair competition, that is, upon the contention that, irrespective of the technical question of trade-mark, appellee palmed off its fertilizers by dressing them up in such manner as to deceive purchasers buying with the care usually exercised in such transactions, and intending to purchase fertilizers manufactured by appellant. We have before us samples of the sacks or bags in which the respective parties offered their goods for sale to the trade, branded with the brands in controversy. So far as we are informed there was no visible or other sensible difference between these fertilizers. They were compounded substantially according to the same formula, one in common use, and were of equal value for the use intended to be served. The result of this litigation must turn then upon a consideration of the points of resemblance and of difference between the bags in which the fertilizers manufactured by the parties were sent to market. It is true that a test by which to reach a proper basis of decision is not to be had in noting differences that become apparent only when the bags are laid side by side, for the average purchaser has no opportunity for a comparison of that sort, and it is the tendency to carelessness on the part of buyers that makes unfair competition possible and profitable. If the buyer has one article before him, the best he can do is to compare it with his memory of the other. Hence it is said that "the test of similarity is not visual comparison but memory comparison." Nims, Unfair Competition (2d Ed.) §§ 321, 326. Still, the court, in a case like this, has no memory to be consulted, and, in deciding what is and what is not objectionable similarity, must decide by the impression produced upon the eye by the disputed names, brands, or marks. The eye, with a glance of average carefulness, not microscopic, takes in the contending brands, and through the comparison thus made the mind finds its only satisfactory way to a judgment as to the existence of the alleged deceptive imitation. Nims, § 323. The bags used by appellant and appellee alike contained 200 pounds of fertilizer, and were labeled alike "200 lbs.," but it is not shown—it is not probable—that the capacity of the bags in which appellee packed its "Empire of the South Cotton Guano" differed from that of the bags it used for its other brands, and, in any event, there could be no monopoly as to that. On each bag the formula of its contents is printed, and towards the bottom of the bags used by appellee were printed or stenciled the words, "Manufactured by Jefferson Fertilizer Company, Birmingham, Alabama," while in letters of about the same size on the bags used by appellant the words, "Manufactured by Empire Guano Company, Nashville, Tennessee"; but all this as provided by statute. Appellant's packages were further labeled in prominent letters in the following arrangement:

HIGH GRADE
EMPIRE
FAVORITE
MANURE

Appellee's were labeled in this fashion:

EMPIRE OF THE SOUTH
COTTON GUANO

It may be properly noted also, we think, since the tout ensemble of each package is to be considered, that the reverse side of appellant's bag carried a large representation of a red flag and upon it the words "The Empire Guano Company" in white letters; on the reverse side of the bag used by appellee, in large black letters, the words "Jefferson Brand," and between them, the first above, the second below, a picture two-thirds life size, a picture intended, we venture, to represent the author of the Declaration of Independence. "Seeing in such case is believing," as the Supreme Court of the United States observes in Liggett & Myers Tobacco Co. v. Finzer, 128 U. S. 182, 9 Sup. Ct. 60, 32 L. Ed. 395, and so, looking to the labels in dispute as they appeared upon the packages used by the parties, and remembering that appellant had no right to the exclusive use of the word "Empire," we are unable to reach any satisfactory conclusion to the effect that the label used by appellee was calculated to deceive a purchaser intending to purchase fertilizer manufactured by appellant and buying with the 'care such a purchaser would usually exercise in such a transaction. Hence we are unable to say that there was error in the decrees rendered by the circuit court, sitting in equity, by which the temporary injunction in this cause was dissolved and appellant's bill dismissed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.