141 So. 627

## BLUE et al. v. HOOKS.

### 4 Div. 629.

Supreme Court of Alabama.

March 24, 1932.

Rehearing Denied May 26, 1932.

Cope & Cope, of Union Springs, for appellants.

T. S. Frazer, of Union Springs, for appellee.

THOMAS, J.

The suit was for detinue, trover, and money had and received.

We have examined the evidence, and there are ample, reasonable inferences that may be drawn which supported the verdict of the jury. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135.

It was without error that Mrs. Farnell, the owner and operator of the public gin, was permitted to testify that she gave instructions that plaintiff's bale of cotton be turned over, and the bale of cotton in question showed by stains on the side that it had been on the wet ground in like position. It was a circumstance, with the other evidence of marking, character thereof, time, weight, and wrapping, that afforded a reasonable inference of identification. There was no error in allowing Mrs. Farnell to testify that she had an agreement with plaintiff to gin and deliver her bale of cotton to the depot; it explained her conduct as to the bale of cotton after it had been ginned.

The witness Dunn was permitted to testify that he conferred with Mrs. Farnell, the owner of the gin, as to whether the cotton was in condition to be ginned, in that it "was sorter wet," but that "we ginned it" and rolled it out on the ground where it was unprotected. This evidence, with evidence that the inferior grade of one of the bales of cotton in question, purchased by appellant-defendant, was of "strict low middling" grade when purchased, was competent.

The fact that the cotton in question was rolled out into the yard unprotected, and in rather an isolated place, and that there was an old negro woman who lived there and whose physical and mental condition, in his judgment, were bad, were circumstances to which the jury may look, with the other evidence, in determining whether this bale of cotton was stolen from that yard. In these rulings there was no error.

The witness Dunn further testified that he was operating the gin for Mrs. Farnell; that he had conversations with the owner as to the Hooks bale, its condition and place of temporary storage; that he did not gin the McLain bale; that it (McLain's bale) came to the gin about one week after he ginned the Hooks cotton; did not report that bale to Mrs. Farnell; it was ginned about one week after the Hooks bale; that the last time he saw the Hooks bale was the day "McLain ginned his cotton"; that the Hooks bale was "flat down" and was "turned over that morning * * * and the other side put on the ground"; was familiar with the markings employed, one with the initials of the party and the other with the gin number; that he marked with printing ink, the Hooks bale with the initials "B. H."; did not know how the other bale was marked; that these bales of cotton "disappeared"; that he went to defendants' mills, examined the bale of cotton recently purchased, and it corresponded in weight, "maybe a few pounds difference"; that he examined the number and initials printed thereupon, but did not know whether the same was on both bales, but "it was on one or the other" of the bales; that the same did not correspond with that on the Hooks lost bale; did not remember about the gin number; that he stated at the time "that that was not Mrs. Hooks' cotton"; that he could not identify the McLain bale.

The witness McLain then testified of his ginning at Mrs. Farnell's gin about a week before Thanksgiving; that another bale was on the yard; that there was a negro there that Mrs. Farnell asked to turn over that bale, and "he asked me (witness) to help him," and this was done, "turned it over (from) flat on the ground" to its "edge propped up sorter" by a stick against it; that he saw his bale at the time, after it was ginned; that "one end of the bagging was loose; when the negro that runs the press, it caught under the holly block part and the holly block part had slipped out. I noticed that at the time. That was about a week before Thanksgiving. I haven't ever seen that cotton since. I went to the gin on Thanksgiving day and my cotton was gone. After I missed the cotton I went to Mrs. Farnell and asked her about it. I was inquiring about my cotton. I went to Troy and Q. V. Williams went with me. He went with me. He drove my car. I can't drive. I got him to drive my car for me. I told him for what purpose I was going to Troy. I went around to all the warehouses to see if that cotton was there. I did not find it. Williams brought me back. After I went down there with Williams I came here looking for my cotton. I went to the Dixie Warehouse. I saw the proprietor of that Warehouse, Mr. Sterling Rainer."

The witness was asked: "Just tell the jury what occurred between you and Mr. Rainer?" and answered over defendants' objection: "I asked Mr. Rainer, I told him I had lost or that two bales of cotton had been stolen; one was mine and one was Mrs. Hooks, and he said: 'I've got two that have been brought in here from your county, that were ginned in Pike County, at a widow's lady's, Mrs. Farnell,' and I says 'Can I see it?' and he says 'Yes, Sir,' and I went on down and he just stood about there, and I says, 'There's a bale up on the side,' I says, 'This looks like my cotton,' and says 'Well that's one of 'em.' "

The witness (McLain) then testified without objection: "I did not see any marks on that cotton, only WB. That was all I could see on it. I said B. W. I have known Q. V. Williams the biggest part of my life. I know his handwriting. I have seen it enough. He writes left handed. I didn't examine those initials on that cotton. I just seen them. I looked at it. I don't know who Byron Williams was. Q. V. Williams marked my cotton at the gin house and my best judgment is that BW was written by Q. V. Williams. * * * I saw my cotton marked. It was marked JDM. It wasn't marked BW. I saw the gin number on my cotton. I don't remember what it was. I didn't examine the bale of cotton at Mr. Rainer's warehouse. I just looked at it. I never bothered to look at the marks on it. I saw a BW on it. It didn't have the same mark on it that my bale had. It didn't have the same gin number. There was a little difference in the weights. My bale was never classed at the gin. There was a difference in the weights."

This was proper evidence in the res gestæ of identification of the two bales of cotton in the warehouse, as those of McLain and Hooks. The fact that the Hooks and McLain bales of cotton were stolen at some time from the gin yard of Mrs. Farnell was not controverted, and that the two bales were purchased and stored. The status quo of the place where the two bales were ginned was likewise not controverted. They were statements or circumstances which were explanatory of the fact of identification that were admissible of that res gestæ. 22 C. J. p. 458, § 548, where our cases are collected. See, also, 22 C. J. p. 450, § 540; p. 458, § 558. This evidence of McLain and Rainer merely identified the two bales recently purchased and stored, and was not hearsay within the rule of the cases cited. Empire Guano Co. v. Jefferson Fertilizer Co., 201 Ala. 277, 78 So. 53, an injunction as to infringement of trade-marks or brands; May v. Willis, 200 Ala. 583, 76 So. 941, as to running a line by a county surveyor at the instance of one party without notice to the other; Dent v. Stovall, 200 Ala. 193, 75 So. 941, dealt with the source of title to realty in unlawful de-

698

tainer—cases not applicable. Subsequently, Mr. Rainer denied he had the conversation with McLain, and this conflict in evidence was for the jury.

The jury had before it the evidence as to handwriting and the original receipts, checks, and indorsements thereon, which were transmitted to this court. Under all the evidence, we are not of opinion that the verdict rendered should be disturbed under the rule that obtains. Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738.

The insistence is made in argument that there was no evidence of value of the cotton converted on which to support the verdict of the jury within the rule of our cases. Granade v. U. S. Lumber & Cotton Co. (Ala. Sup.) 139 So. 409. There is no specific assignment of error or ruling presenting the question. The motion for a new trial is upon the usual general grounds. However, we may say the warehouse receipts were in evidence as to the weights of the two bales of cotton in question, the grade, middling and strict low middling, respectively, the date of their purchase for $154.28. This was sufficient to support the judgment rendered by the jury who were the final arbiters of value within the rule. Granade v. U. S. Lumber & Cotton Co., supra; Code of 1928, § 7656, and authorities; Gossett v. Morrow, 187 Ala. 387, 65 So. 826; Lowe v. Reed, 207 Ala. 278, 92 So. 467; Dent v. Foy, 214 Ala. 244, 107 So. 210; Lightman Brothers & Goldstein v. Epstein, 164 Ala. 660, 670, 51 So. 164; Montgomery Street Rwy. Co. v. Hastings, 138 Ala. 432, 447, 35 So. 412. Such evidence is for the jury, and not conclusive. Obear-Nester Glass Co. v. Mobile Drug Co., 208 Ala. 618, 95 So. 13; Dean v. County Board of Education, 210 Ala. 256, 260, 97 So. 741.

The motion for a new trial was properly overruled, and the judgment of the lower court is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.